Walter BATEMAN, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE; William J. Henderson,[1] Postmaster General, Defendants–Appellees,

and

Aaron Johnson; Ben Fukumitsu; David Burns; Jose Mallari, Defendants.

No. 99–15394.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 26, 2000

Filed July 26, 2000

Amended Nov. 2, 2000

1. William J. Henderson is substituted for his predecessor, Marvin T. Runyon, Jr., as Postmaster General. Fed. R.App. P. 43(c)(2).

Kelechi Charles Emeziem, Emeziem & Ogbu, Oakland, California, for the plaintiff-appellant.

Anne Norris Graham, United States Postal Service; New York, New York; Robert S. Mueller, III, United States Attorney, San Francisco, California; Gail Killefer, Chief, Civil Division, San Francisco, California; Alex G. Tse, Assistant United States Attorney, San Francisco, California; R. Andrew German, United States Postal Service, Washington, D.C.; for the defendants-appellees.

Before: B. FLETCHER, ALARCON, and HAWKINS, Circuit Judges.

Opinion by Judge HAWKINS; Dissent by Judge ALARCON.

ORDER AMENDING OPINION AND DENYING REHEARING AND AMENDED OPINION

**ORDER**

MICHAEL DALY HAWKINS, Circuit Judge:

The Opinion filed on July 26, 2000, and appearing at 219 F.3d 1029 (9th Cir.2000), is amended as follows:

At page 1031, footnote 2, following the second sentence in the footnote, insert:

Counsel for the Postal Service may have had no legal duty to inform the court of Emeziem's absence; however, they clearly knew that Emeziem would be away for a significant amount of time. In the interest of fairness to their adversary and candor to the court, they should have dis-

closed this fact when asking the court to grant the motion for summary judgment as unopposed (or, better still, waited for the scheduled hearing on the summary judgment motion). Our comments on these actions, of course, have no bearing on the decision we reach today; we note them only because, at the risk of sounding naive or nostalgic, we lament the decline of collegiality and fair-dealing in the legal profession today, and believe courts should do what they can to emphasize these values.

At page 1034, delete the first full paragraph through the end of the third paragraph, beginning "Counsel for the Postal Service, on the other hand, skirted the boundaries of good faith[ ]" and concluding "[b]ut at the risk of sounding naive or nostalgic, we lament the decline of collegiality and fair-dealing in the legal profession, and we think courts should do whatever they can to reestablish the preeminence of these values."

The Petition for Rehearing is denied. Judge Alarcon would grant the petition for a rehearing for the reasons set forth in his Dissent.

## OPINION

We concern ourselves here with a familiar issue in civil litigation: what constitutes "excusable neglect" within the meaning of Rule 60(b)(1) of the Federal Rules of Civil Procedure? For years, the common understanding was that this term only covered situations beyond an attorney's control, not negligence on the part of counsel. In *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court altered this understanding. In the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, which is nearly identical to Rule 60(b)(1), it held that "excusable neglect" covers "situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 395, 113 S.Ct. 1489. It also established an equita-ble test to determine whether an attorney's neglect is excusable. We adopted this test for Rule 60(b)(1) cases in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.1997).

In the case before us, Walter Bateman appeals the district court's denial of his motion for relief under Rule 60(b)(1). He argues that the district court did not apply the equitable test of *Pioneer* and *Briones* in deciding whether his attorney's failure to comply with a filing deadline constituted "excusable neglect." We agree and conclude that, under the correct legal standard, Bateman is entitled to relief under Rule 60(b)(1).

## I.  FACTS AND PROCEDURAL BACKGROUND

Bateman filed an action against his former employer, the U.S. Postal Service, alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964. The parties conducted discovery, and a trial date was set for October 26, 1998. In late July 1998, Bateman's attorney, Kelechi Emeziem, learned of a family emergency in Lagos, Nigeria and made plans to leave the country. He scheduled his flight to leave San Francisco on Monday, August 10, 1998, returning from Nigeria on Saturday, August 29, 1998.

On Thursday, August 6, four days before Emeziem was scheduled to leave, his legal assistant telephoned the Assistant United States Attorney ("AUSA") representing the Postal Service and informed him that Emeziem was leaving the country. Emeziem's assistant asked to cancel two depositions and also asked if the Postal Service would delay filing its motion for summary judgment, which it had earlier indicated would be filed at the conclusion of the depositions. The AUSA responded that he could not postpone filing the motion because of the proximity of the trial date and that, in fact, he was prepared to file the next day. The AUSA then suggested that Emeziem would have to contact the

court if he wanted an extension of time to file a response.

The Postal Service filed its motion for summary judgment as planned on Friday, August 7 and noticed September 11 for the hearing date. The AUSA also faxed a letter to Emeziem's office that afternoon, stating that he could not postpone filing the motion and that he would not agree to an extension of time for Emeziem's response unless ordered by the court. Emeziem left for Nigeria on Monday, August 10, without filing a response or seeking an extension. At argument before this court, he explained that he was out of the office on Friday and Monday and that no one called to tell him about the motion.

The deadline for filing a response passed on August 21, while Emeziem was still out of the country. One week later, the Postal Service filed papers in the district court asking that its motion be granted as unopposed. These moving papers made no mention of Emeziem's absence from the country or his office's prior request to postpone the summary judgment process during his absence.[2] Emeziem returned to San Francisco on Saturday, August 29, 1998, but did not contact the district court or the government for some 16 days to explain his absence. Emeziem seeks to excuse this lapse based on his recovery from jet lag and the time it took to sort through the mail that had accumulated while he was away.

On September 3, 1998, the district court, unaware that Emeziem had ever left the country, issued an order vacating the hearing and granting summary judgment in favor of the Postal Service. Twelve days later, Emeziem wrote a letter to the court

asking that it "rescind" the entry of summary judgment. He explained that he had been out of the country and was unaware that a motion for summary judgment had been filed. On September 29, 1998, the court issued an order denying Emeziem's request because he had not filed a proper motion for relief under Rule 60(b). Emeziem then filed a Rule 60(b) motion on November 5, which the district court denied on February 5, 1999. Emeziem timely appealed the denial on Bateman's behalf. We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

■ We review for an abuse of discretion the district court's denial of a Rule 60(b) motion. *See Briones,* 116 F.3d at 380. A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *See United States v. Washington,* 98 F.3d 1159, 1163 (9th Cir.1996).

## III. ANALYSIS

■ Rule 60(b)(1) of Civil Procedure provides that a court may relieve a party or a party's legal representative from a final judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. As discussed above, the Supreme Court held in *Pioneer* that "excusable neglect" covers negligence on the part of counsel. It then said that the determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceed-

---

**2.** At argument, the government told us this omission was perfectly consistent with the legal culture of San Francisco. If so, civil litigation has become decidedly less civil than we are accustomed to. Counsel for the Postal Service may have had no legal duty to inform the court of Emeziem's absence; however, they clearly knew that Emeziem would be away for a significant amount of time. In the interest of fairness to their adversary and candor to the court, they should have disclosed this fact when asking the court to grant

the motion for summary judgment as unopposed (or, better still, waited for the scheduled hearing on the summary judgment motion). Our comments on these actions, of course, have no bearing on the decision we reach today; we note them only because, at the risk of sounding naive or nostalgic, we lament the decline of collegiality and fairdealing in the legal profession today, and believe courts should do what they can to emphasize these values.

ings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *See Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

■ In *Briones*, 116 F.3d at 381, we noted that *Pioneer* changed our law on excusable neglect. Before *Pioneer*, we had held that "ignorance of court rules does not constitute excusable neglect" and had applied a per se rule against the granting of relief when a party failed to comply with a deadline. *See Briones*, 116 F.3d at 381, 382. After *Pioneer*, however, we recognized that the term covers cases of negligence, carelessness and inadvertent mistake. *See id.* at 381, 113 S.Ct. 1489. We also adopted the equitable test articulated in *Pioneer* to determine whether neglect is "excusable" under Rule 60(b)(1). *See id.* We stated that the factors recited in *Pioneer* were not exclusive, but that they "provide a framework with which to determine whether missing a filing deadline constitutes 'excusable' neglect." *Id.*

■ Bateman argues that the district court abused its discretion because it failed to conduct the equitable analysis laid out in *Pioneer* and *Briones*. We agree. In its order denying relief, the district court cited *Pioneer*, but only for the proposition that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489. The court did not acknowledge *Pioneer's* statement that "excusable neglect" includes cases of negligence, nor did it mention the equitable test established by *Pioneer*. The court also did not mention this court's adoption of the equitable test for Rule 60(b)(1) cases in *Briones*.

We would not ordinarily reverse a court simply for failing to articulate the *Pioneer* and *Briones* test, as long as it actually engaged in the equitable analysis those cases mandate. However, it does not appear the district court did so here. The court's order gives three reasons for finding that Emeziem's conduct did not amount to excusable neglect: (1) Emeziem knew about the motion for summary judgment at least three days before he left for Nigeria; (2) Emeziem did not object to the hearing date or tell the court he would be unavailable to file opposition papers; and (3) Emeziem did not explain why he failed to contact the court between his return on Saturday, August 29, 1998 and the filing of the court's order granting summary judgment the following Thursday.

While these factors are certainly relevant to the determination of whether Emeziem's conduct was excusable, they revolve around just one of the *Pioneer* and *Briones* considerations—the reason for the delay. The court made no mention of the other three: the prejudice to the defendant, the length of the delay and its potential impact on the proceedings, and whether Emeziem acted in good faith.

■ Emeziem did not aid the court's efforts. His Rule 60(b)(1) motion did not cite *Pioneer* or *Briones* and did not discuss any of the factors under the equitable test. However, his failure did not relieve the district court of the duty to apply the correct legal standard. *Cf. United States v. Iverson*, 162 F.3d 1015, 1026 (9th Cir. 1998) ("A district court abuses its discretion when it makes an error of law or rests its decision on clearly erroneous findings of material fact."). The court would have been within its discretion if it spelled out the equitable test and then concluded that Emeziem had failed to present any evidence relevant to the four factors. But it abused its discretion by omitting the correct legal standard altogether.

■ We are particularly sensitive to the omission in this case because, after conducting the equitable analysis ourselves, we conclude that Bateman is entitled to Rule 60(b)(1) relief.[3] The prejudice to the

---

**3.** As Judge Alarcon's dissent points out, in *Briones*, 116 F.3d at 382, we remanded to the district court to apply the equitable analysis, rather than apply the analysis ourselves. However, *Briones* was the first case in which we adopted the equitable test for Rule 60(b) cases, and the parties were likely unfamiliar with the test. In this case, both parties have crafted their arguments around the *Briones* factors and have even argued the merits of

Postal Service was minimal. It would have lost a quick victory and, should it ultimately have lost the summary judgment motion on the merits, would have had to reschedule the trial date. But such prejudice is insufficient to justify denial of relief under Rule 60(b)(1). *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (rejecting claim of prejudice from two week delay between entry of default judgment and filing Rule 60 motion because "we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory"); *see also Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir.1985) ("the mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion").

The length of delay, and its potential impact on the judicial proceedings, was also minimal. Emeziem wrote to the court twelve days after it granted summary judgment and filed his Rule 60(b)(1) motion a little more than one month after the court denied his request to rescind the judgment. The delay in filing the Rule 60(b)(1) motion, while slightly longer than the two-week delay in *Augusta Fiberglass*, 843 F.2d at 812, was still not long enough to justify denying relief. Moreover, discovery had only closed in August, 1998, and there is no evidence that the trial would have been postponed for an inordinate amount of time.[4]

The reason for the delay is, admittedly, weak. Emeziem should have arranged for someone to handle his cases while he was away, and once he returned he should have responded more quickly to the motion for summary judgment. He showed a lack of regard for his client's interests and the court's docket. But there is no evidence that he acted with anything less than good faith. His errors resulted from negligence and carelessness, not from deviousness or willfulness.

Because we think the district court applied the wrong legal standard, and because the equities in this case weigh in favor of Bateman, we remand to the district court with instructions to grant the Rule 60(b)(1) motion.

REVERSED and REMANDED.

ALARCON, Circuit Judge, dissenting:

I respectfully dissent. I agree with the majority that the district court failed to consider each of the factors set forth in the equitable test we adopted in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997), in ruling on Bateman's Rule 60(b)(1) motion. In *Briones*, we concluded that the district court abused its discretion in denying a Rule 60(b)(1) motion based on the failure of the district court to consider the four factors enumerated in *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) for determining excusable neglect. In *Briones*, we vacated the judgment and remanded with instructions to the district court to conduct "further proceedings in light of *Pioneer* and the holding in this case." 116 F.3d at 382. We did not presume to engage in the task of "conducting

Rule 60(b) relief in their briefs. In such a situation, where the record is sufficiently complete for us to conduct the analysis ourselves, it would be inefficient to remand the issue to the district court. Better to put this matter aside and let the parties get on with the case. *See Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir.1996) (applying *Pioneer's* equitable analysis directly rather than remanding to the district court); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir.1988) (finding that district court abused

its discretion in denying Rule 60(b) relief and granting relief directly rather than remanding to district court); *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1281 (5th Cir.1985) (granting Rule 60(b) relief after finding that district court abused its discretion).

4. The Postal Service asserts in its brief that the trial would have been postponed until 2000. It provides no evidence to support this claim.

the equitable analysis" in the first instance, as my colleagues have done in this matter. Maj. Op. at 1224.

Our task as an appellate court in reviewing the denial of a Rule 60(b)(1) motion is to determine whether the district court abused its discretion. *See Briones*, 116 F.3d at 380. Our review is deferential. We can reverse only if we determine that the district court abused its discretion in applying the law, or if we conclude that its findings are not supported by the record. *See United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir.1996). Here, the district court abused its discretion by failing to apply each of the factors set forth in *Briones* in determining whether the conduct of appellant's counsel was excusable. As noted by the majority, the district court failed to make findings regarding "the prejudice to the defendant, the length of the delay, and its potential impact in the proceedings, and whether [appellant's counsel] acted in good faith." Maj. Op. at 1224. As the law of this circuit, *Briones* requires us to vacate the judgment and remand for further proceedings in which the district court must apply the proper equitable analysis in exercising its discretion. I would have readily joined their number had the majority followed *Briones* by vacating the judgment and remanding with instructions to the district court to make findings demonstrating that it had applied the proper equitable test.

While conceding that plaintiff's counsel "failed to present any evidence relevant to the four factors," the majority then proceeds to make its own findings on each of the *Briones* factors and concludes that Bateman is entitled to Rule 60(b)(1) relief. The majority cites no Ninth Circuit authority for the proposition that an appellate court may substitute its own discretion, based on its independent findings of fact, after determining that the district court erred in "omitting the correct legal standard altogether." Maj. Op. at 1224. While recognizing that "[a] district court abuses its discretion when it makes an error of law or rests its decision on clearly erroneous findings of material fact," Maj. Op. at 1224, the majority has implicitly adopted a novel standard for reviewing a district court's exercise of its discretion, namely, where the district court fails to make findings of material facts because it has not applied the correct legal standard, an appellate court may make its own findings,[1] and direct the district court to vacate its judgment without conducting an evidentiary hearing as required by the law of this circuit.

By erroneously undertaking to make its own findings of facts, the majority has unfairly deprived the appellees of the opportunity to present evidence regarding each of the *Briones* factors, and usurped the power of the district court to make factual findings and exercise its discretion, subject, of course, to our review for abuse of discretion. I would follow our decision in *Briones* and remand for an evidentiary hearing, and instruct the district court to engage in the equitable analysis required by *Briones* in exercising its discretion. By following the out of circuit authority cited in footnote three of the majority opinion, my colleagues have unnecessarily created an intracircuit conflict with *Briones*.

---

1. Some of the majority's factual findings are based upon statements by counsel at oral argument that are outside the record. For example, under the rubric "Facts and Procedural Background" the majority states that "[a]t oral argument before this court, [plaintiff's counsel] explained that he was out of the office on Friday and Monday and that no one called to tell him about the motion." Maj. Op. at 1222–23.