**SPEISER, KRAUSE & MADOLE P.C., d/b/a Speiser, Krause, Madole & Cook, Plaintiff–Appellee,**

v.

**Rudy A. ORTIZ; Rudy A. Ortiz & Associates P.C., Defendants–Appellants.**

No. 00–55195.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 2001 *

Filed Nov. 21, 2001

---

**86.** *See Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Sidney C. Flores, Law Offices of Flores & Barrios, San Jose, California, for the defendants-appellants.

John J. Veth, Speiser, Krause & Madole, P.C., Irvine, California, for the plaintiff-appellee.

Before: FERGUSON, FERNANDEZ, and McKEOWN, Circuit Judges.

FERNANDEZ, Circuit Judge:

Rudy A. Ortiz and Rudy A. Ortiz & Associates, P.C., a Virginia corporation,[1] appeal the district court's order denying their motion to set aside the entry of default and to enlarge time to answer. We affirm.

## BACKGROUND

Speiser, Krause & Madole, P.C., a California law firm, entered into an agreement with Ortiz, an attorney, for the purpose of dividing the legal representation responsibilities arising out of an airline crash case. After the case was concluded, a dispute arose between the attorneys regarding the division of the attorneys' fees.

As a result, on January 7, 1999, Speiser Krause filed a complaint in the Superior Court of the State of California, County of Orange, and on April 23, 1999, Speiser

---

1. Hereafter, for convenience, this opinion will refer only to Ortiz, but the analysis as to him applies with equal force to the corporation.

Krause sent a letter by certified mail to Ortiz indicating its intent to seek an entry of default in the event it did not receive a timely answer to the complaint.

Without having filed an answer in state court, Ortiz removed the case to the United States District Court for the Central District of California. Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, Ortiz was required to file an answer to the complaint by May 6, 1999.

Ortiz, however, did not bother reading Rule 81(c) carefully enough to understand it and, therefore, did not bother answering the complaint. He admits as much. He later also said that the district court's issuance of an order to show cause regarding jurisdiction somehow perplexed and excused him because, he thought, perhaps the case might not have actually been removed. Thus, on July 16, 1999, Speiser Krause requested an entry of default as to Ortiz. Default was entered that same day. Soon thereafter Speiser Krause notified Ortiz that it intended to seek a default judgment.

Ortiz then made a motion to set aside the default and to enlarge the time to answer on the basis that his neglect was excusable. The district court denied the motion and ordered the entry of the default judgment. Ortiz then appealed.

## STANDARD OF REVIEW

■ We review for an abuse of discretion the district court's decision to enter a default judgment. *Haw. Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 511–12 (9th Cir.1986). That standard of review "necessarily encompasses the entry of de-

fault," because entry of default alone does not constitute an appealable final order. *Id.; see also Savarese v. Edrick Transfer & Storage, Inc.,* 513 F.2d 140, 146 (9th Cir.1975); *Madsen v. Bumb,* 419 F.2d 4, 6 (9th Cir.1969).

## DISCUSSION

■ The district court's determination in this case was well within the boundaries of its discretion. Ortiz argues that his neglect to read and understand the pellucid command of Rule 81(c) regarding the time to answer the complaint[2] was excusable neglect. *See* Fed.R.Civ.P. 60(b)(1).

■ While an attorney's egregious failure to read and follow clear and unambiguous rules might sometimes be excusable neglect, "mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392, 113 S.Ct. 1489, 1496, 123 L.Ed.2d 74 (1993). As we have said in a similar situation, "counsel has not presented a persuasive justification for his misconstruction of nonambiguous rules. Accordingly, there is no basis for deviating from the general rule that a mistake of law does not constitute excusable neglect." *Kyle v. Campbell Soup Co.,* 28 F.3d 928, 931–32 (9th Cir. 1994); *see also Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 825 (9th Cir.1996). Again, Rule 81(c) is just that clear, and as we once said about an attorney who did not follow it, "[w]e see no reason for the federal courts to excuse such professional neglect." *Savarese,* 513 F.2d at 147.

---

**2.** Rule 81(c) reads in pertinent part: "In a removed action in which the defendant has not answered, the defendant shall answer ... within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of the summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest."

■ Interestingly enough, Ortiz tries to avoid the effect of his neglect by asserting that he fell into a state of confusion when the district court issued an order to show cause. He thought that, perhaps, the case which he had removed had not really been removed. He thus tries to excuse one failure to read a plain provision of the law by resting upon his failure to read still another equally plain provision. In other words, he seeks solace in his neglecting to observe that a case is automatically removed when the removal papers are served and filed, as they were here. *See* 28 U.S.C. § 1446(d); *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1238 (9th Cir.1994); *Okot v. Callahan*, 788 F.2d 631, 633 (9th Cir.1986). However, his neglect of one clear rule is no anodyne for the damage caused by neglect of another one. As we said in *Savarese*, 513 F.2d at 147: "We feel, as did the district judge, that parties who remove cases to the federal courts should become acquainted with and comply with the Federal Rules of Civil Procedure." [3]

■ Ortiz also briefly alludes to the good cause standard regarding defaults. *See* Fed.R.Civ.P. 55(c). That standard is less rigorous than excusable neglect. *See Haw. Carpenters' Trust Funds*, 794 F.2d at 513. The distinction, however, is one of degree, which might make a difference at the margin. But the failure of this lawyer, who was the removing party, to properly read the clear language of Rule 81(c) does not amount to good cause either. *See id.; Savarese*, 513 F.2d at 146.

## CONCLUSION

Appellate judges are often tempted to mention the abuse of discretion standard and then treat that as a mere formalistic incantation preparatory to their deciding what they would have done had they been the district judge. But as we see it, the standard means that within substantial margins the district court could be upheld had it determined the issue one way or the other.

Here the district court would not necessarily have erred had it decided that excusable neglect (or good cause) was shown. But it decided that neither was. That conclusion certainly was not error. Indeed, it was much closer to being rhadamanthine than the opposite conclusion would have been.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

"The history of procedure is a series of attempts to solve the problems created by the preceding generation's procedural reforms." Judith Resnick, *Precluding Appeals*, 70 Cornell L.Rev. 603, 624 (1985).

I respectfully dissent. By applying the former per se rule, the District Court ignored the holdings of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) and its progeny, which call for an equitable analysis and broader interpretation of "neglect" under Fed.R.Civ.P. 60(b)(1). Similarly, by glossing over these developments, the majority implicitly reintroduces this former per se rule.

In *Pioneer*, creditors of a Chapter 11 debtor sought an extension of the bar date for filing late proofs of claim under Fed. R. Bankr.P. 9006(b). *Pioneer*, 507 U.S. at 382, 113 S.Ct. 1489. Rule 9006(b)(1)

---

**3.** We do not overlook *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997). But, as we said, the error in that case did not result "only from a failure to read and at- tempt to follow court rules." *Id.* at 382. The same is true of *Bateman v. United States Postal Service*, 231 F.3d 1220, 1222–23 (9th Cir. 2000).

grants the bankruptcy court the discretion to permit a late filing if the failure to comply with an earlier deadline resulted from "excusable neglect." The bankruptcy court denied the motion and held that excusable neglect was limited to circumstances that were beyond the party's reasonable control. The Sixth Circuit reversed and remanded. *Id.* at 385–86, 113 S.Ct. 1489.

In affirming the decision of the Sixth Circuit, the Supreme Court held that "neglect" has its ordinary expected meaning, which includes negligence, carelessness, and inadvertent mistake. *Id.* at 388, 113 S.Ct. 1489 (stating that Congress intended that "the courts would be permitted where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the parties control"). In analogizing Fed. R. Bankr.P. 9006(b) to Fed. R.Civ.P. 6(b) and 60(b),[1] the Court explained that, "at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."[2] *Id.* at 394, 113 S.Ct. 1489.

In order to determine whether such negligence is excusable, the Court suggested an equitable analysis, which would take into account all relevant circumstances surrounding the party's omission. *Id.* at 395, 113 S.Ct. 1489. The Court stated that such an analysis should include the following factors: (1) the danger of prejudice to the opposing party; (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;"[3] and (4) "whether the movant acted in good faith." *Id.*

In *Briones v. Riviera Hotel & Casino,* 116 F.3d 379 (9th Cir.1997) (per curiam), this Circuit held that the equitable test for "excusable neglect" set forth in *Pioneer* had equal force and application in the Rule 60(b) context. *Id.* at 381–82, 113 S.Ct. 1489 (overturning the per se rule that "ignorance of court rules does not constitute excusable neglect, even if the litigant appeared *pro se*"). In *Briones,* a former employee brought a *pro se* discrimination action. The district court dismissed the action after the employee failed to respond to the defendant's motion to dismiss, and then denied the employee's Rule 60(b) motion to set aside the judgment. This Cir-

---

**1.** Fed. R. Bankr.P. 9006(b)(1) is comparable to Fed.R.Civ.P. 60(b)(1) in that it gives the court discretion to allow late filings that are the result of excusable neglect. *Id.* at 382–83.

**2.** The majority misconstrues the Court's language by stating: "While an attorney's egregious failure to read and follow clear and unambiguous rules might sometimes be neglect, 'mistakes construing the rules do not usually constitute excusable neglect.'" Maj. op. at 886 (internal quotation marks and citation omitted). This quote is taken out of context. The complete quote is: "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omis-

sions caused by circumstances beyond the control of the movant." *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489 (emphasis added).

**3.** However, the third factor appears to have limited applicability in the Rule 60(b) context. *Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 382 n. 1 (9th Cir.1997) (per curiam). "Thus, at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer,* 507 U.S. at 394, 113 S.Ct. 1489. "Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered 'neglect.'" *Id.* (internal citation omitted).

cuit vacated the district court's order, holding that its application of the per se rule and its failure to apply *Pioneer*'s equitable factors constituted an abuse of discretion. *Id.* at 382, 113 S.Ct. 1489 (remanding the case for further proceedings to determine whether the employee's neglect was excusable).

In *Briones,* this Circuit acknowledged the underlying tension, which presently exists between the cases cited in the District Court opinion,[4] and the holdings of *Pioneer* and its progeny. The court stated that, although this Circuit seemed to require denial of a Rule 60(b) motion seeking relief from a failure to comply with court rules, this type of "per se rule cannot exist after *Pioneer.*" *Id.* Thus, the court recognized the possibility that failure to follow court rules could constitute "excusable neglect" and adopted the equitable analysis set forth in *Pioneer.*

Following *Briones,* this Circuit held that the district court abused its discretion when it failed to apply the equitable test of *Pioneer* and *Briones* in determining whether an attorney's failure to comply with a filing deadline constituted "excusable neglect." *Bateman v. United States Postal Serv.,* 231 F.3d 1220, 1222 (9th Cir. 2000). In *Bateman,* the district court denied the plaintiff's Rule 60(b) motion after the plaintiff's attorney failed to respond to the defendant's summary judgment motion. *Id.* at 1223. On appeal, this Circuit

reversed and remanded to the district court with instructions to grant the Rule 60(b)(1) motion. *Id.* at 1225. In applying the *Pioneer* factors, the panel determined that, although the reason for the delay was weak,[5] the rest of the equities weighed in favor of granting relief. *Id.* at 1224–25.

In determining that an equitable analysis was mandated by *Pioneer* and *Briones,* the panel reviewed the prior case law in the Circuit and clarified the present state of the law.

In *Briones,* we noted that *Pioneer* changed our law on excusable neglect. Before *Pioneer,* we had held that "ignorance of court rules does not constitute excusable neglect" and had applied a per se rule against the granting of relief when a party failed to comply with a deadline. After *Pioneer,* however, we recognized that the term covers cases of negligence, carelessness and inadvertent mistake. We also adopted the equitable test articulated in *Pioneer* to determine whether neglect is "excusable" under Rule 60(b)(1). We stated that the factors recited in *Pioneer* were not exclusive, but that they "provide a framework with which to determine whether missing a filing deadline constitutes 'excusable' neglect."

*Bateman,* 231 F.3d at 1224 (citations omitted).

In light of the recent case law, the District Court erred in the same manner,

---

4. The District Court predominantly relied on *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814 (9th Cir.1996), and *Kyle v. Campbell Soup Co.,* 28 F.3d 928 (9th Cir. 1994). Both of these cases were decided prior to *Briones,* and both indicate that a per se rule, rather than the *Pioneer* factors, should apply. The majority also relies on cases from this Circuit that were decided prior to *Briones* and *Bateman v. United States Postal Service,* 231 F.3d 1220 (9th Cir.2000).

5. The failure to respond to the defendant's summary judgment occurred as a result of the attorney's 19–day trip to Nigeria for a family emergency. Although the attorney knew that the response was due, he failed to seek an extension from the court. The defendant then moved for the motion to be granted, unopposed, without mentioning the attorney's absence to the court. Upon the attorney's return to the country, he failed to contact the court or the defendant for 16 days to explain his absence. *Bateman,* 231 F.3d at 1222–23.

which the lower court did in *Bateman*. It failed to consider all relevant circumstances, including the equitable factors enumerated in *Pioneer*, as required by *Bateman* and *Briones*. Further, it applied a modified version of the former per se rule, *i.e.*, a mistake of law cannot constitute excusable neglect unless there is a persuasive justification for the misconstruction. By failing to apply the correct legal standard for evaluating whether the neglect was excusable, the District Court abused its discretion. *Id.* at 1222–23.

The majority adopts this mistaken reasoning by surmising that Ortiz misconstrued an unambiguous rule without a persuasive justification,[6] and by concluding that his actions cannot constitute excusable neglect. The rule set forth by the majority can be summarized as follows: In order to apply the equitable analysis required by *Pioneer*, a movant must first show that there is a persuasive justification for the misconstruction of a court rule. This reasoning runs contrary to both *Briones* and *Bateman*, and reinstitutes a modified version of the former per se rule.

Moreover, the majority's decision contravenes the purpose of Rule 60(b). This Circuit has "admonished that, as a general matter, Rule 60(b) is 'remedial in nature and ... must be liberally applied.'" *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir.2001) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Further, this Circuit has stated:

> [I]n applying the general terms of Rule 60(b) to default judgments, this Court has emphasized that such judgments are "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Put

another way, where there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute.

*Id.* at 696 (internal citations omitted). Here, the majority ignores the purpose of Rule 60(b), allowing the District Court to avoid the merits decision and enter default judgment for a minor procedural error.

If we apply the appropriate standard in the present case, the equitable factors delineated in *Pioneer* would require reversal. First, the danger of prejudice to the opposing party in this case is minimal. *See Bateman*, 231 F.3d at 1224–25. Second, the length of the delay and its potential impact on the judicial proceedings was negligible. *See id.* (holding that a failure to contact the court for 24 days did not constitute a significant delay). Ortiz filed his Motion to Set Aside Entry of Default less than one month after default had been entered, and approximately three months after the filing deadline for his answer.

Third, the reason for the delay in filing an answer was Ortiz's confusion caused by the District Court's sua sponte Order to Show Cause. The District Court sua sponte decided that there was a question regarding whether it had diversity jurisdiction. It then issued its Order to Show Cause why the case should not be dismissed prior to the time that Ortiz was required to answer. Ortiz, using ordinary intelligence and reasoning, determined that he should not burden the District Court with the merits of the case until jurisdiction was determined. As a *pro se* litigant and an inexperienced attorney, Or-

---

**6.** I also disagree with the majority's finding that Ortiz misconstrued an unambiguous rule. As discussed below during the equitable analysis of the present facts, an ordinary person could have been confused by the effects of the District Court's sua sponte Order to Show Cause.

tiz's confusion regarding the District Court's sua sponte Order to Show Cause regarding federal jurisdiction and its effect on removal is understandable. Even the rules cited by the District Court or the majority do not directly address the effect of a sua sponte order by the court on the removal process.[7]

Fourth, there is no evidence that Ortiz acted with anything less than good faith. It appears that his misreading "resulted from negligence and carelessness, not from deviousness and willfulness." *Bateman,* 231 F.3d at 1225. Finally, the merits of this case were never decided. Rather, the district court took the easy way out by summarily entering default judgment for $157,291.55.

Accordingly, the equities weigh in favor of Ortiz, and he should have been granted Rule 60(b) relief. Because the District Court abused its discretion by failing to apply the correct legal standard, I would reverse and remand this case.

---

7. Even if the rules are unambiguous as the majority argues, Ortiz should have still been granted Rule 60(b) relief. As aforementioned, the third factor has limited applicability in the context of Rule 60(b). *Briones,* 116 F.3d at 382 n. 1 (noting that the "inapplicability [of the third factor] to Rule 60(b) may suggest that the excusable neglect provision in that rule is somewhat broader than it is under other rules."). Rule 60(b) does not require that the delay was caused by reasons beyond the movant's control. *Pioneer,* 507 U.S. at 394, 113 S.Ct. 1489. Thus, the fact that Ortiz could have further researched the effects of the sua sponte order on his petition for removal is not determinative. *See Bateman,* 231 F.3d at 1225 (finding that, although the reason for the delay was "weak," the Rule 60(b) motion should have been granted because the rest of the equities weighed in favor of the movant).

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).