**Laffit PINCAY, Jr.; Christopher J. McCarron, Plaintiffs– Appellants,**

v.

**Vincent S. ANDREWS; Robert Andrews; Vincent Andrews Management Corp., Defendants–Appellees.**

**No. 02–56577.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 2003.

Filed Dec. 10, 2003.

Neil Papiano, Los Angeles, CA, for the plaintiffs-appellants.

David Boies, Armonk, NY, for the defendants-appellees.

Before NOONAN, KLEINFELD, and WARDLAW, Circuit Judges.

NOONAN, Circuit Judge.

Lafitt Pincay, Jr. and Christopher J. McCarron ("Pincay") appeal the order of the district court retroactively extending the time in which Vincent S. Andrews, Robert L. Andrews, and Vincent Andrews Management Corp. ("Andrews") might appeal from an adverse judgment of the district court. Holding that the district court made a mistake of law, we reverse the order of the district court.

## PROCEEDINGS

In litigation that began in 1989, Pincay sued Andrews for financial injuries in violation of RICO and California law. In 1992, a jury returned verdicts in Pincay's favor on both the RICO and California counts. Pincay was ordered to elect one remedy or the other; he chose the RICO judgment. On appeal, this judgment was reversed on the basis of the federal statute of limitations. *Pincay v. Andrews*, 238 F.3d 1106 (9th Cir.2001). On remand, Pincay elected the state remedy. Judgment was entered in his favor on July 3, 2002.

On July 10, the nonlawyer calendaring clerk in the large law firm representing Andrews faxed the lawyer supervising the

case a copy of the judgment. This lawyer was not in the office, and an exchange of e-mails resulted:

> Lawyer to calendaring clerk:
>
> PS what's going on with that Andrews judgment? Was there a proposed form of judgment submitted that we missed? Don't we get a chance to object? And when does our time run to notice the appeal? I know you're out today, but please call on Friday to discuss.

> Calendaring clerk to lawyer:
>
> As for Andrews, a proposed judgment was served and filed on 10/11/01. We have it in our files. I'll have to check to see if we objected, but I don't see anything. I'll check our motion papers on their motion for entry of judgment. According to FRAP rule 4, we get 60 days from date of **entry** of judgment, which was 7/3/02. 60 days would run us to 9/1, which is a Sunday. So 9/2 would be the last date to file a Notice of Appeal.

To this message, the clerk added:

> Oops, September 2 is Labor Day, so make it Sept. 3.

> Lawyer to calendaring clerk:
>
> To be safe, let's calendar it for the Thursday before Labor Day [i.e., August 29].

The clerk replied he had done so. According to the lawyer's declaration in this case, he "later confirmed that the accelerated deadline was on the calendar."

On August 22, the lawyer received a message from counsel acting for Andrews in his bankruptcy case in Connecticut. The message informed him that Pincay, a claimant in the bankruptcy, had filed a notice that the California judgment against Andrews was final as the appeal period had expired. On August 25, Andrews filed notice of a motion for an extension of time in which to file an appeal from the judgment of July 3. As the district court put

Andrews' argument, "Defense counsel explains that he relied on the calendar clerk at his law firm to calculate the deadline, and the clerk made a mistake." Andrews contended that this mistake constituted "excusable neglect."

On August 27, Andrews filed his appeal. On August 30, the district court found Andrews' appeal to have been delayed by excusable neglect and granted the motion to extend so that the August 27 notice of appeal became timely.

Pincay appeals the order extending the time.

ANALYSIS

The Federal Rules of Appellate Procedure provide:

> Rule 4. Appeal as of Right—When Taken
>
> (a) Appeal in a Civil Case.
>
> (1) Time for Filing a Notice of Appeal.
>
> (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.

Under the rule, Andrews' appeal should have been filed by August 2 and was in fact 25 days late.

Section (a)(5) of Rule 4, however, provides as follows:

> (5) Motion for Extension of Time.
>
> (A) The district court may extend the time to file a notice of appeal if:
>
> (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
>
> (ii) . . . that party shows excusable neglect or good cause.

Andrews' counsel did not show good cause for his failure to file on time, nor can his action be classified as excusable neglect.

What counsel did was to delegate a professional task to a nonprofessional to perform. Knowledge of the law is a lawyer's stock in trade. Bureaucratization of the law such that the lawyer can turn over to nonlawyers the lawyer's knowledge of the law is not acceptable for our profession.

Authoritative guidance as to the meaning of "neglect" has been provided by the Supreme Court construing a bankruptcy rule permitting late filing on a showing of excusable neglect. The Court stated:

> The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or unattended to esp[ecially] through carelessness." Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.... Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Commenting further on "excusable neglect" in Fed.R.Civ.P. 6(b), the Court added:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Id.* at 392, 113 S.Ct. 1489 (footnote omitted).

In *Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir.1994), we considered "excusable neglect" in Fed.R.Civ.P. 6(e) in a case where a motion for attorneys' fees was days late and the district court had found excusable neglect because the plaintiff's attorney had misinterpreted a local rule to incorporate a federal rule of procedure. We found the misinterpretation of the rules to be an inexcusable mistake of law and reversed the district court. We said:

> Although the Court in *Pioneer* recognized that "excusable neglect" is a flexible, equitable concept, the Court also reminded us that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at [392], 113 S.Ct. at 1496.

*Id.* at 931.

In *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir.1996), we considered excusable neglect under Fed. R.App. P. 4(a)(5). The district court found excusable neglect in plaintiffs' counsel encountering difficulties in arranging a meeting with the class of plaintiffs they represented. The appeal had been filed one day late. The appellees argued "somewhat persuasively" that the delay was due solely "to the attorney's calendaring miscalculation." *Id.* at 1054. We did not decide what caused the delay but simply stated that "this court cannot reverse the district court's ruling unless it has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* at 1054. As we were in doubt, and not definitely and firmly convinced of the calendaring error, we affirmed the district court.

In *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997), we held that a pro se plaintiff's opposition, 3 months late, to a motion to dismiss, might be due to excusable neglect and that relief would not be summarily denied; we reversed the

district court's denial of relief and remanded.

In *Bateman v. United States Postal Serv.*, 231 F.3d 1220 (9th Cir.2000), we considered "excusable neglect" under Fed. R.Civ.P. 60(b)(1). A former employee of the Postal Service was suing his employer. He was represented by a lawyer who on August 10 left the country to attend to a family emergency in Lagos, Nigeria, returning August 29. Informed that the lawyer was going to be away, the Postal Service filed a motion for summary judgment on August 7. The deadline for filing a response was August 21. No response was made by the lawyer absent in Nigeria. On August 28, the Postal Service, not mentioning its knowledge of the lawyer's absence, moved for judgment on its unopposed motion. The motion was granted on September 3. The district court refused to relieve the plaintiff of the judgment on the grounds of excusable neglect by the lawyer. Stressing the failure of the district court to consider the equitable factors enumerated by the Supreme Court in *Pioneer,* we made the equitable analysis ourselves and found the lawyer's neglect excusable because of the lack of prejudice to the Postal Service and the small impact of the delay on the judicial system. *Id.* at 1225.

■ As he did in the district court, Andrews focuses on the mistake made by the calendaring clerk—an unexplained aberration by a man experienced in court procedures. The lawyer's only excuse is that he relied on this non-lawyer clerk. But this focus is wrong. The focus must be on the lawyer. Paralegals and other nonlawyers perform services in firms; many of the services involve knowledge of the law and were once performed by junior lawyers. The economy of such delegation is evident. But delegation cannot be made of responsibility for professional knowledge. When

the lawyer delegates, he retains responsibility for knowing the law.

The lawyer, as he states in the e-mail quoted above, was unaware of the law. Not knowing the law governing one's practice is different from mere neglect, and it cannot be classed as excusable neglect. No axiom is more familiar than, "Ignorance of the law is no excuse." This ordinary rule is not a per se rule, but it ordinarily applies to those whose profession is the law.

Nowhere in the proceedings in this case does the lawyer state that he had read the federal rules governing appeals. Nowhere does he state that he misremembered them. All that the lawyer states is that he relied on his clerk. A lawyer's obligation to know relevant law cannot be delegated in this way to a nonlawyer. A solo practitioner would not even be in a position to attempt this kind of delegation. Membership in a large firm does not give the lawyer leave to delegate to others the basic rules of the lawyer's practice.

■ We do not have a pro se plaintiff as in *Briones.* We do not have here circumstances like those in *Bateman* where the churlish conduct of counsel for the government took advantage of the known absence of opposing counsel. We do not have a case like *Marx,* where we could not second guess the district court's excusing of a one day slip. However, we do have a case like *Kyle,* where we found inexcusable neglect because counsel "committed a mistake in interpreting and applying the Local Rules and Rule 6(e) of the Federal Rules of Civil Procedure, which were *not* ambiguous." *Kyle,* 28 F.3d at 931. Federal Rule of Appellate Procedure 4(a)(5) is no more ambiguous than the rule at issue in *Kyle.* Neither *Marx* nor *Bateman* nor any other case cited to us has changed *Kyle*'s rule. It is consonant with *Pioneer*'s teaching that "ignorance of the rules or mistakes

construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 388, 113 S.Ct. 1489. Here there was ignorance of the rules, compounded by delegation of knowledge of the rules to a nonlawyer for whom responsibility was not accepted.

Accordingly, the judgment of the district court is REVERSED.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

In my view, the majority makes two mistakes. First, it takes too constricted a view of the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,[1] and second, it accords insufficient deference to the district court's exercise of discretion.

I certainly do not quarrel with the majority's exasperation at an experienced lawyer from a large and well-staffed firm carelessly delegating the reading of appellate rules to a non-lawyer and failing adequately to supervise. And I note with approval that the majority indicates this was a "large law firm," distinguishing the negligence here from that of a solo practitioner, who "would not even be in a position to attempt this kind of delegation."[2] The majority thus leaves room, in a solo practitioner's case, for the court to consider whether the decision in the case at bar should be distinguished. A lawyer in a large firm who was out of town could presumably have some young associate work as late into the night as necessary to discover, read, and follow Federal Rule of Appellate Procedure 4, but a solo would be unable to call upon such useful help.

My dissent is directed to the proposition that compels the majority's conclusion: "Not knowing the law governing one's practice is different from mere neglect, and it cannot be classed as excusable neglect,"[3] especially when compounded by delegation of that knowledge to a non-lawyer. This holding is erroneous. Ignorance of the law and negligent delegation can indeed be classed as excusable neglect. And ignorance of the law plus negligent delegation—not knowing that the deadline for filing a notice of appeal in a civil case where the government is not a party is 30 days, not 60, and relying on a calendar clerk's reading of Federal Rule of Appellate Procedure 4—is the precise error that the Andrews' lawyer made.

The majority fleshes out this concept of ignorance of the law, qualifying it with its concern that the lawyer delegated professional tasks to a non-lawyer to perform. Delegation may be negligent, but negligence, under *Pioneer*, can be "excusable neglect." There is no difference in principle between negligent mistake of law and negligent supervision. All professionals delegate. Medical doctors delegate many traditional duties to physician's assistants and nurses. Lawyers and judges delegate to associates, law clerks, interns, paralegals, calendar clerks, and secretaries. Lay calendar clerks commonly set trial dates for district judges, who delegate to them to avoid Speedy Trial Act errors. Of course delegation can be excessive, but what matters is the degree of supervision.

The Supreme Court in *Pioneer* expressly approved of the principle that "ignorance of the rules" may sometimes be "ex-

1. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

2. Maj. Op. at 948, 951.

3. Maj. Op. at 951.

cusable neglect." [4] The Court rejected the view taken by some courts that "excusable neglect" had to have some cause beyond the reasonable control of the attorney, and held instead that "neglect" included "faultless omissions to act and, more commonly, omissions caused by carelessness." [5] This definition encompasses missing a filing deadline because of "negligence." Thus, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." [6] Because the Supreme Court has stated that "ignorance of the rules" [7] *may* constitute excusable neglect, it is not permissible for us to hold that "it *cannot* be classed as excusable neglect." [8]

To be sure, ignorance is not a free pass. The Court says that various kinds of carelessness including "ignorance of the rules ... do not usually constitute 'excusable neglect.' " [9] Thus in *Speiser, Krause & Madole P.C. v. Ortiz* we noted, and affirmed a district court's refusal to depart from, "the general rule that a mistake of law does not constitute excusable neglect." [10] However, the right way, under *Pioneer,* to decide cases involving ignorance of federal rules is with an "elastic concept" equitable in nature, not with a per se rule such as the one on which the majority relies. [11] We are not free to impose a per se rule. [12]

Under *Pioneer,* the determination of whether a careless omission, including one resulting from a lawyer's ignorance of the rules, is " 'excusable' ... is at bottom an equitable one, taking account of all rele-

---

**4.** *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489.

**5.** *Id.* at 388, 113 S.Ct. 1489.

**6.** *Id. See* Fed. R.App. P. 4(a)(5) advisory committee's note (2002 Amendments) ("The good cause and excusable neglect standards have 'different domains.' *Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 232 (7th Cir. 1990). They are not interchangeable, and one is not inclusive of the other. The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant.").

**7.** *Id.* at 391–92, 113 S.Ct. 1489. The *Pioneer* citation is drawn from this discussion:

> Under [Federal Rule of Civil Procedure] 6(b), where the specified period for the performance of an act has elapsed, a district court may enlarge the period and permit the tardy act where the omission is the "result of excusable neglect." As with [Federal Rule of Bankruptcy Procedure] 9006(b)(1), there is no indication that anything other than the commonly accepted meaning of the phrase was intended by its drafters. It is not surprising, then, that in applying Rule 6(b), the Courts of Appeals have generally recognized that "excusable neglect" may extend to inadvertent delays. Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

507 U.S. at 391–92 (citations omitted).

**8.** Maj. Op. at 951 (emphasis added).

**9.** *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489.

**10.** *Speiser, Krause & Madole P.C. v. Ortiz,* 271 F.3d 884, 886 (9th Cir.2001) (affirming under the abuse-of-discretion standard a district court's denial of a motion to set aside a default and enlarge the time to answer).

**11.** *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489 (citing 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, p. 479 (2d ed.1987)).

**12.** *Id.* at 392–95, 113 S.Ct. 1489.

vant circumstances surrounding the party's omission." [13] Among these are "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." [14]

The majority opinion does not discuss these equitable factors that *Pioneer* says to take into account. The district court discussed each of them explicitly and carefully. For the first, second, and fourth factors, it found that (1) "[b]esides the prejudice that will always exist when a party does not receive the windfall benefit of an opponent's missed deadline, plaintiffs will not be significantly prejudiced by defendants' short delay in filing the notice of appeal" [15]; (2) "the delay in filing is only a few weeks, which will not prejudice the efficient administration of justice"; [16] and (4) "[p]laintiffs do not contend that defense counsel flouted the deadline or otherwise acted in anything other than good faith." [17] In a page and a half of detailed analysis on the third factor, the district court concluded that although "[s]ome Ninth Circuit cases narrowly construe 'excusable neglect' even after the *Pioneer* decision.[18] ... the prevailing view—especially regarding Rule 4—is that attorney mistakes made in good faith with no prejudice to the other party are excusable neglect." [19]

The district court got the law right. As it noted, a number of our opinions are consistent with the view I now urge here, and inconsistent with the position taken by the majority. The majority discusses and distinguishes *Marx v. Loral Corp.*,[20] *Briones v. Riviera Hotel & Casino*,[21] and *Bateman v. United States Postal Service.*[22] To its discussion, I add this critical—and dispositive—insight from *Marx*: "Although *Pioneer Inv.* arose in the context of the Bankruptcy Rules, its *rationale* would seem to apply equally to the Federal Rules of Appellate Procedure." [23] Applying the rationale of *Pioneer* to Rule 4(a)(5), *Marx* concluded that "[t]he district court's analysis of the *Pioneer Inv.* factors in this case, although considerably lenient to the plaintiffs, was not a clear error of judgment." [24] Just as we directed in *Bateman*, the district court properly "conduct[ed] the equitable analysis laid out in *Pioneer* and

13.  *Id.* at 395, 113 S.Ct. 1489.

14.  *Id.*

15.  *Pincay v. Andrews*, No. CV 89–1445–WMB (C.D.Cal. Sept. 3, 2002) (order granting defendants' motion for extension of time to file notice of appeal).

16.  *Id.*

17.  *Id.*

18.  The district court cites to *Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir.1994), and *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir.1996).

19.  *Pincay v. Andrews*, No. CV 89–1445–WMB (C.D.Cal. Sept. 3, 2002) (order granting defendants' motion for extension of time to file notice of appeal).

20.  *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir.1996).

21.  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997).

22.  *Bateman v. United States Postal Serv.*, 231 F.3d 1220 (9th Cir.2000).

23.  *Marx*, 87 F.3d at 1054 (noting that *Pioneer* had recognized the division of authority among the courts of appeals "in their interpretations of excusable neglect as found in Rule 4(a)(5) of the Federal Rules of Appellate Procedure") (internal quotation marks omitted) (emphasis added).

24.  *Marx*, 87 F.3d at 1054.

Briones."[25]

Contrary to the majority's assertion that no Ninth Circuit law has changed *Kyle* ("Neither *Marx* nor *Bateman* nor any other case cited to us has changed *Kyle*'s rule."[26]), the rules *have* changed, and they have changed in the specific context of Federal Rule of Appellate Procedure 4(a)(5). *Marx* explicitly adopted and applied the changed rules of *Pioneer* to our analysis of excusable neglect in the context of Federal Rule of Appellate Procedure 4(a)(5).[27]

*Kyle v. Campbell Soup Co.*, the case on which the majority rests its decision, cannot do the work the majority makes it do.[28] *Kyle* reads *Pioneer* narrowly, too narrowly in my present view, and too narrowly to be reconciled with our subsequent, controlling decision in *Marx*. When *Kyle* was decided, we had not yet extended the rationale of *Pioneer* from its context of ambiguities in bankruptcy proceedings to unambiguous Federal Rule of Appellate Procedure 4(a)(5), so its failure to adopt the rationale of *Pioneer* was arguably appropriate. Now that we have, post-*Kyle*, explicitly adopted and applied the rationale of *Pioneer* to Federal Rule of Appellate Procedure 4(a)(5), we cannot lay *Pioneer* aside.

*Kyle* is also distinguishable in another way. *Kyle* speaks to a late motion for attorneys fees, which does not go to the merits of the original litigation. Attorney fees are ancillary, and district court judges may legitimately take a less liberal approach in deciding whether ignorance of the rules constitutes excusable neglect where disposition of the case on the merits will not be affected.[29] District courts commonly grant relief based on the view that it's undesirable to turn a dispute on the merits into a legal malpractice case. The decision today will prevent resolution of the appeal on the merits.

Federal Rule of Civil Procedure 1 says to construe the rules to get a "just" decision on the merits.[30] This case is an appeal on the merits of a seven-figure judgment. It may be "speedy" and "inexpensive" (at least for the court system) to prohibit an appeal from going forward, but a district court must serve all three aspects of a proper resolution—that it be *just*, speedy, and inexpensive. Justice is better attained by considering, and where appropriate reconsidering, the merits. Collateral matters such as attorneys fees do not go to the merits, the "determination of [the] action."[31]

The majority's second error is its failure to review deferentially the district court's exercise of discretion. The majority says the district court abused its discretion because it "made a mistake of law" in treating the lawyer's ignorance of the rule setting the time for an appeal as excusable

25. *Bateman*, 231 F.3d at 1224.

26. Maj. Op. at 951.

27. *Marx*, 87 F.3d at 1054.

28. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931–32 (9th Cir.1994).

29. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir.1996).

30. *See Martel v. County of Los Angeles*, 56 F.3d 993, 998 (9th Cir.1995) (en banc) (Kleinfeld, J., dissenting) ("Federal Rule of Civil Procedure 1 specifically states that the rules 'shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.' Fed.R.Civ.P. 1. Sometimes serving one purpose tends to disserve another. For example, it is typical of bicycle engineering that one tries to build a lightweight, inexpensive, sturdy frame. But the better one serves any two goals, the worse one serves the third.").

31. Fed.R.Civ.P. 1.

neglect.[32] The majority thus substitutes its own judgment for that of the lower court. Avoiding the standard of review, it has mistakenly characterized the district court's permissible reading of *Pioneer* as an erroneous interpretation of the law.

The Federal Rules of Appellate Procedure assign to the district court the authority to decide in the first instance whether neglect is excusable.[33] We review for abuse of discretion district court orders granting extensions nunc pro tunc to file notices of appeal.[34] "Under the abuse of discretion standard, however, this court cannot reverse the district court's ruling unless it has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." [35] This standard of review is no "mere formalistic incantation." [36] In *Speiser, Krause*, we explained this standard as meaning that "within substantial margins the district court could be upheld had it determined the issue one way or the other." [37] And in that case, in which we affirmed the district court's denial of relief regarding an attorney's failure to "bother reading [Federal Rule of Civil Procedure] 81(c) carefully enough to understand it," we noted that "the district court would not necessarily have erred" had it granted relief.[38] Under *Speiser, Krause*, we cannot, as the majority does, substitute our judgment for that of the district court. Nor can we avoid analyzing the equitable factors, as *Pioneer* and *Marx* require, by treating the question as one of law.

It is the *district court's* prerogative, not ours, to decide to grant or deny a motion for an expansion of time to file a notice of appeal. In this case there was no bad faith, no mischievous tactic, no prejudice to Pincay except the potential loss of the "windfall benefit" of the Andrews' missed deadline.[39] Simple ignorance of the law, even combined with negligent delegation, *may* constitute excusable neglect, and the district court did not make "a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." [40]

Good lawyers commonly give their adversaries stipulations relieving them of inadvertent errors not going to the merits. The rigid per se rule the majority creates today will make it difficult for them to do so. Our court thereby damages the mutual civility and accommodation that characterizes the practice of law at its best. This unnecessary rule will be career-destroying for decent lawyers who make inadvertent errors. We should affirm the district court's careful and fair exercise of its discretion.

32. Maj. Op. at 17344.

33. Fed. R.App. P. 4(a)(5)(A).

34. *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir.1996).

35. *Id.*

36. *Speiser, Krause*, 271 F.3d at 887.

37. *Id.* at 886, 887.

38. *Id.*

39. *Pincay v. Andrews*, No. CV 89–1445–WMB (C.D.Cal. Sept. 3, 2002) (order granting defendants' motion for extension of time to file notice of appeal).

40. *Marx*, 87 F.3d at 1054.