279 F.3d 750
 James LAURINO, M.D., Plaintiff-Appellant,
v.
SYRINGA GENERAL HOSPITAL, a political subdivision of the State of Idaho; David P. Bodine, Jr.; Mary A. Solberg; Mary Schmidt; Charles A. Pratt; Betty J. Alm; Karon Coburn, each individually and in official capacities; John Does 1-5, individually and in official capacities; Wayne Hallopeter, M.D., individually and in his official capacity, Defendants-Appellees.
 No. 00-35233.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 13, 2001.
 Filed January 30, 2002.
 
 COPYRIGHT MATERIAL OMITTED John Meienhofer, Boise, ID, for the plaintiff-appellant.
 Kim C. Stanger, Hawley Troxell Ennis & Hawley LLP, Boise, ID, for the defendants-appellees.
 Appeal from the United States District Court, District of Idaho; Edward J. Lodge, Chief Judge, Presiding. D.C. No. CV-98-00439-EJL.
 Before: KOZINSKI and GOULD, Circuit Judges, and SCHWARZER,* Senior District Judge.
 SCHWARZER, Senior District Judge.
 James Laurino appeals the district court's order denying his Rule 60(b) motion to reinstate his case and the final judgment of dismissal and award of attorneys fees. Fed.R.Civ.P. 60(b). Concluding that the district court abused its discretion, we reverse and remand with directions.
 Laurino filed this action against Syringa General Hospital and others challenging the termination of his hospital privileges. Defendants served their answer to the amended complaint on March 30, 1999, and served document requests and interrogatories on May 24, 1999. Settlement discussions between counsel began on July 2, 1999, and continued until October 11, 1999, consuming about ten hours of defense counsel's time. During this period defendants granted repeated extensions to comply with discovery requests. On October 12, 1999, following the breakdown of settlement talks, defense counsel asked for a response to their discovery requests. Laurino's attorney, Brian Donesley, then moved to withdraw, and on November 4, 1999, the court granted the motion by an order providing that under Idaho Civil Local Rule 83.6(c), failure by plaintiff to appear with another attorney or in pro per within twenty days would be sufficient ground for dismissal of the action with prejudice. On December 6, 1999, Laurino not having made an appearance, defendants moved to dismiss with prejudice for failure to comply with the court's November 4, 1999, order and for failing to respond to discovery, and sought attorneys fees. On December 17, 1999, the court granted the motion to dismiss.
 On January 13, 2000, Laurino, represented by new counsel, moved to set aside the dismissal order under Rule 60(b). On January 27, 2000, Laurino, who was then working in a new position in Maryland, filed a supporting affidavit acknowledging that he should have been more diligent but explaining that
 [he] was in the process of telephoning attorneys in the Boise, Idaho area in the late November to early December time frame. Several of the attorneys who [he] telephoned did not return [his] telephone calls. Even through the month of December, [he] was not able to obtain an attorney to represent [him] in this matter. In the past week, [he] ... was finally able to retain Mr. Meienhofer with the help of Mr. Donesley.
 On February 7, 2000, the court denied the motion to set aside the dismissal order, and on April 17, 2000, it denied the motion for reconsideration.
 We review for abuse of discretion a district court's denial of a Rule 60(b) motion. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223 (9th Cir.2000). Under the abuse of discretion standard, the trial court's exercise of discretion "should not be disturbed unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1451 (1994) (quotations and citations omitted).
 Rule 60(b)(1) provides that a court may relieve a party from a final judgment on the basis of excusable neglect. "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Bateman, 231 F.3d at 1223-24, citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).
 While the district court seemed to acknowledge that a five-week delay itself would not warrant dismissal, it found that the delay was substantially longer by including the earlier period when Laurino failed to communicate with his attorney. That, however, was the period when the parties were conducting settlement discussions and defendants had extended Laurino's time to respond to discovery. To charge this time against Laurino was clearly erroneous. As for the five-week delay from the end of November until new counsel's appearance on January 13, Laurino explained in his uncontradicted affidavit that he tried during that period to obtain new counsel, but was unsuccessful and that he was involved in a divorce proceeding and in a move to a new position in Maryland. See Bateman, 231 F.3d at 1225 (finding excusable neglect where a similar period of delay was issue).
 The court erred, moreover, when it found prejudice because defendants "have been denied the ability to prepare for trial because Mr. Laurino has deliberately failed to answer interrogatories, failed to produce requested documents, and ignored this Court's direct orders." As the preceding paragraph shows, the first two reasons are in part erroneous, the parties having stipulated to extend discovery for some of the time elapsed. As for the last reason, it ignores the facts in Laurino's affidavit. See Falk v. Allen, 739 F.2d 461, 464 (9th Cir.1984) (per curiam) ("On a Rule 60(b) motion, this court will accept the allegations of the movant's factual statement."). While a presumption of prejudice arises from a plaintiff's unexplained failure to prosecute, Laurino's affidavit provided a non-frivolous explanation. See Hernandez v. City of El Monte, 138 F.3d 393, 400-01 (9th Cir.1998).
 As for bad faith, the district court made no finding. It merely noted that plaintiff has failed to show that he is presently prosecuting his claim with reasonable diligence. Here, "there is no evidence that [Laurino] acted with anything less than good faith. His errors resulted from negligence and carelessness, not from deviousness or willfulness." Bateman, 231 F.3d at 1225.
 We have no occasion to consider the interplay of Rule 60(b) and Idaho Civil Local Rule 83.6(c), which states that failure to arrange for new counsel within twenty days after withdrawal of counsel "shall be sufficient grounds for the entry of a default." D. Id. L. Civ. R. 83.6(c)(2). It is sufficient to say that the district court did not base its order denying the motion on the local rule. Moreover, this court has "adopted the equitable test articulated in Pioneer to determine whether neglect is `excusable' under Rule 60(b)(1)." Bateman, 231 F.3d at 1224 (citations omitted); see Speiser v. Ortiz, No. 00-55195, 2001 WL 1472915, at *4 (9th Cir.2001) (Ferguson, J., dissenting) (emphasizing that after Pioneer the failure to follow court rules can constitute excusable neglect).
 We recognize that the district court is in a better position than we are to determine what period of delay is acceptable, Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir.1984), but where the period of delay under the circumstances is not unreasonable and there is no indication of interference with the court's docket, the district court made no finding of bad faith, and the order rests on material factual errors and fails to consider the explanation offered by Laurino, we conclude that the court made a clear error of judgment. "Especially when a case is still young, `a district court must consider ... less drastic alternative sanctions' before dismissing." Raiford v. Pounds, 640 F.2d 944, 945 (9th Cir.1981) (per curiam) (citations omitted); see Yourish v. Cal. Amplifier, 191 F.3d 983, 992 (9th Cir.1999); Hernandez, 138 F.3d at 401; cf. Ash, 739 F.2d at 496-97 (finding dismissal without prejudice a more easily justified sanction under such circumstances).
 Accordingly, the judgment dismissing the action with prejudice is REVERSED and the action is REMANDED for entry of an order dismissing the action without prejudice. Because Laurino did not challenge the award of attorneys fees in his brief in this court, we affirm the award.
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 
 1
 KOZINSKI, Circuit Judge, dissenting.
 
 
 2
 1. As the majority recognizes, we review the denial of a rule 60(b) motion for abuse of discretion. The first step in this process is to identify the order appealed from and the district court's reasons therefor. It is an abuse of our discretion to attribute to the district court reasons on which it did not rely or reverse for errors the district court did not commit. The majority does both.
 
 
 3
 The opinion states: "While the district court seemed to acknowledge that a five-week delay itself would not warrant dismissal, it found that the delay was substantially longer by including the earlier period when Laurino failed to communicate with his attorney." Maj. Op. at 753. Neither half of this sentence is true: The district court did not acknowledge that plaintiff's five-week delay was insufficient to support dismissal, nor did it measure plaintiff's delay by tacking on the earlier period during which plaintiff failed to communicate with his lawyer. Nor, as the majority claims later in its opinion, did the district court deny the 60(b) motion because plaintiff failed to answer interrogatories and produce requested documents. See Maj. Op. at 753.
 
 
 4
 A glance at the February 7, 2000, order denying the 60(b) motion — the order we are actually reviewing — reveals that the district court committed none of the errors the majority attributes to it. The relevant portion of the order reads as follows:
 
 
 5
 In an affidavit filed January 27, 2000, Plaintiff James Laurino seeks relief from this Court's Order based on excusable neglect. Despite Mr. Laurino's admitted failure to act diligently in retaining an attorney to file a Notice of Appearance or personally notifying the Court of his intention to continue prosecution of this case, Mr. Laurino asserts that this Court should permit this matter to proceed forward on the merits because of his personal hardships, including pressures in his personal and professional career, and the holiday season.
 
 
 6
 Rule 60(b) permits relief from a Court's Judgment or Order based on excusable neglect. However, in Engleson v. Burlington Northern R. Co., 972 F.2d 1038, 1043 (9th Cir.1992), the Ninth Circuit expressly held that "[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." See also, Allmerica Financial Life Ins. and Annuity Co. v. Llewellyn, 139 F.3d 664, 666 (9th Cir.1998). Accordingly, this Court denies Plaintiff's Motion to Set Aside Dismissal Order and Reinstate Case (Docket No. 25) and grants Defendants' Motion to Strike Plaintiff's Motion to Set Aside Dismissal (Docket No. 26).
 
 
 7
 The district court did mention plaintiff's failure to cooperate with discovery, but only in a later order, dated April 17, 2000, ruling on a different motion. I discuss the reasons given by the district court in its April 17 order below, see pp. 757-58 infra. It suffices here to point out that the district court did not rely on those reasons in denying the rule 60(b) motion. Moreover, the order containing these reasons was filed 40 days after plaintiff's notice of appeal. It is black letter law that, once a notice of appeal is filed from a final judgment, the district court is divested of jurisdiction. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58-59, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). Any orders entered thereafter are not part of the record and can't be considered in conducting our review.
 
 
 8
 2. Putting aside the majority's contrived errors, the real issue is whether the district court abused its discretion by rejecting plaintiff's explanation for his delay. The majority holds that the district court did abuse its discretion because plaintiff's "uncontradicted affidavit," Maj. Op. at 753, provides a "non-frivolous explanation" that the district court had to accept. Id. at 753. Ha!
 
 
 9
 The district court need not swallow a party's self-exculpatory affidavit hook, line and sinker. Rather, the court is entitled to be skeptical of self-serving allegations, especially when they are wholly insubstantial and contradicted by the record. For example, plaintiff's former lawyer swears that on November 5 he mailed plaintiff the order directing him to find new counsel or proceed pro se. That order would have reached plaintiff no later than November 10. Cf. Fed.R.Civ.P. 6(e) (adding three days for service by mail). Plaintiff says he "received the Order in the middle to late November, 1999, time frame." I don't know what a "time frame" is, but I do know that people use such weasel-words when more precise terms would be harmful to them. Given the specificity of the lawyer's assertion, and the vagueness of plaintiff's, the district court was entitled to conclude that plaintiff received the order by November 10, but chose to ignore it.
 
 
 10
 The affidavit also lacks the specificity one expects in a showing of excusable neglect. (I attach the whole affidavit so that the bar will know how little we require to reverse an experienced and respected district judge for abuse of discretion.) For example, plaintiff refers to being distracted during the holiday season, but the district court's order was entered in early November. Plaintiff does not claim to have celebrated Ramadan; Christian and Jewish holidays are in December. Absent a more specific explanation, the district court was entitled to discount how much the holidays interfered with plaintiff's ability to pursue his lawsuit. Similarly, plaintiff refers to a divorce and a move out of state, but does not tell us when these events took place nor how they kept him from complying with the district court's order. Plaintiff also claims that he had to "devote a lot of extra time and energy in getting oriented and organized in [his] new position," but devotes no time and energy to giving us any specifics. He claims that his new job "requires [him] to move from place to place, thereby making [him] difficult to contact," but does not say why he could not be reached by pager, cell phone, voice mail or E-mail. Would he give the same story to a sick patient?
 
 
 11
 Equally meager is plaintiff's description of his efforts to obtain new counsel: "However, I was in the process of telephoning attorneys in the Boise, Idaho area in the late November to early December time frame. Several of the attorneys who [sic] I telephoned did not return my telephone calls. Even through the month of December, I was not able to obtain an attorney to represent me in this matter." This is what's known as "the dog ate my homework" excuse. Surely, an experienced district judge can infer from this risible "explanation" that plaintiff did not try very hard to hire a new lawyer. The only thing that is remotely explanatory is the claim that several attorneys did not return plaintiff's phone calls; of course, it follows that some did. Plaintiff does not say how many lawyers he called, nor why he was unable to hire those who did call him back. He does not claim that he contacted the Idaho State Bar Lawyer Referral Program, or asked his former lawyer for help (until it was much too late). Plaintiff does say that "time kept marching along," but the laws of the universe are hardly an excuse for missing a court deadline. Significantly, the affidavit was not filed by plaintiff acting pro se, but by his new lawyer (whose name appears in the caption). The district court could reasonably infer that, had plaintiff been able to say anything more helpful to his cause, the lawyer would have put it in the affidavit.
 
 
 12
 In reviewing the district court's decision for abuse of discretion, we are not entitled to fill in the gaps or force the district court to accept at face value plaintiff's vague, self-serving and insolent explanation. Rather, we must ask whether — read in the light most favorable to the district court's decision — the explanation is so compelling that no reasonable district judge would have failed to buy it at face value. If plaintiff's affidavit meets this standard, we might as well tell parties they can sneeze on a piece of paper and file it as conclusive proof of excusable neglect.
 
 
 13
 Even if we read plaintiff's affidavit in the light most favorable to him, it still fails to excuse his giving the district court the back of his hand. In essence, plaintiff's "explanation" is that he had a busy life, much too busy for him to bother with the district court's order. But since when is a busy life an adequate explanation for ignoring the district court and the opposing party? While on rare occasions we have held that defendants — who are hauled into court against their will — may be excused for failing to attend to their court responsibilities, see, e.g., Falk v. Allen, 739 F.2d 461, 464 (9th Cir.1984), we have never let plaintiffs, who choose the time and place of battle, use that excuse. Plaintiff's "busy life" explanation is particularly inapt because he could easily have complied with the district court's order by advising the court that he will proceed on his own, at least until he could get a lawyer. The district court's order provided this as an alternative means for complying and plaintiff offers absolutely no excuse for failing to take advantage of it.
 
 
 14
 The simple fact is that plaintiff showed no sign of life at all for 69 days. Was he in a coma all this time? Was he on a secret mission for the CIA? Was he held hostage by terrorists? No, he was busy with his divorce, his new job and the holidays. This is not an adequate reason for ignoring a court order. Plaintiff's so-called explanation is an insult and the court was absolutely right to disregard it.
 
 
 15
 3. I turn now to the reasons the majority erroneously attributes to the district court. The court gave those reasons in a subsequent order, disposing of plaintiff's motion (apparently brought under rule 59) to reconsider the order that is now on appeal before us. In effect, the district court asked itself the same question we are now answering: Had it erred by denying the rule 60(b) motion? For the reasons already explained, see pp. 754-55 supra, we cannot read these reasons into the district court's 60(b) ruling. Nevertheless, the reasons are based on the record and (like the district court) we should take them into account in considering whether the district court abused its discretion. They are obviously quite relevant — plaintiff dragged his feet in conducting the litigation and willfully failed to comply with the court's orders.
 
 
 16
 As for the first consideration, we need only look at the affidavit filed by plaintiff's first counsel in seeking to withdraw:
 
 
 17
 2. Plaintiff Laurino has failed to live up to terms relating to the attorney-client agreement between Affiant and the Plaintiff with regard to funding the lawsuit and paying attorney fees and costs, and despite repeated requests;
 
 
 18
 3. Plaintiff has failed to maintain communication with attorney or to respond to communication material to and essential to conduct of this lawsuit, making further representation impossible....
 
 
 19
 Plaintiff does not claim that he was unable to pay his lawyer, nor that he lacked the information the lawyer requested. He fails to give any explanation at all for failing to even talk to his lawyer.
 
 
 20
 The majority mistakenly believes that plaintiff caused no delay because defendants had extended discovery deadlines during settlement negotiations. After three months of discovery extensions, defendants (perhaps growing frustrated at trying to negotiate with an attorney who could not speak with his client) refused to extend the deadline any further, demanded discovery responses and threatened to move for sanctions. Caught between this ultimatum and an intransigent, unreachable client, plaintiff's attorney withdrew, leaving discovery in limbo. By the time the district court dismissed the case, discovery was more than two months overdue; plaintiff caused plenty of delay.
 
 
 21
 As for plaintiff's failure to comply with the district court's orders, there is little I can add to what I said above. Even the most forgiving reading of plaintiff's affidavit yields no explanation for his failure to give any sign of life for 69 days. Plaintiff is educated; he knows how to write a letter indicating that he plans to proceed without a lawyer or asking for more time. In considering whether the district court abused its discretion, we cannot gloss over plaintiff's total and unexplained absence from the litigation for over two months. The majority shrugs this aside, but absent some calamity, a party is not entitled to drop out of sight and leave the court and the opposing party standing at the altar until he has the good grace to show up. Had the district court acted less decisively, it and the defendants might still be cooling their heels.
 
 
 22
 4. I read Bateman v. United States Postal Service, 231 F.3d 1220 (9th Cir. 2000), and Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), as calling for a multi-factor balancing when the party seeking relief offers something that is truly an excuse. A party can't just file an affidavit saying "I didn't comply with the court's order because I didn't feel like it" and force the district court to jump through the Bateman hoops. Plaintiff points to no error, no misunderstanding, no calamity; he didn't comply with the court's order because he had better things to do. Such thinly veiled defiance does not trigger a multi-factor balancing analysis.
 
 
 23
 But if balance the Bateman factors we must, they clearly cut in favor of the district court. As we said in Bateman, where the district court does not perform the balancing, we can do it ourselves and must affirm if the record would plausibly support a finding consistent with the district court's judgment. Bateman, 231 F.3d at 1224-25.
 
 
 24
 According to Bateman, the factors are as follows: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Id. at 1223-24.
 
 
 25
 We assume prejudice absent a non-frivolous explanation. See Hernandez v. City of El Monte, 138 F.3d 393, 401 (9th Cir. 1998). Plaintiff's paper-thin explanation doesn't come close to rebutting the presumption of prejudice. Even without the presumption, prejudice is clear. Given that plaintiff's lawsuit involves alleged oral statements and oral agreements made years ago, it's easy to see how his refusal to talk to his own lawyer and provide discovery has jeopardized the defendants' ability to prepare a defense.
 
 
 26
 The length of plaintiff's delay weighs strongly in the district court's favor. Before dismissing the case, the district court waited 42 days for plaintiff to get a new lawyer or proceed pro se — quite generous, given that, under the local rules, a delay of longer than 20 days "shall be sufficient grounds for the entry of a default." D. Id. L. Civ. R. 83.6(c)(2). Rule 60(b)'s equitable analysis will sometimes justify ignoring an explicit time period set out in rules, but it is not an abuse of discretion for a district court to rely on a local rule in determining how long is too long. Local rules are "laws of the United States," Marshall v. Gates, 44 F.3d 722, 724 (9th Cir.1995) (citation omitted), and it is not an abuse of discretion to follow the law.
 
 
 27
 Plaintiff's reason for his delay is pathetic. See pp. 755-56 supra. He identifies no obstacles that prevented him from hiring an attorney on time, and utterly fails to explain why he didn't bother to ask for more time or proceed to represent himself. The lack of any plausible explanation is reason enough to deny plaintiff's motion.
 
 
 28
 Finally, we can infer bad faith from plaintiff's failure to make even a token gesture of interest in the litigation. See C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1208 (7th Cir.1984). He refused to talk to his own lawyer or provide him with information essential to meet discovery obligations, forcing the lawyer to withdraw. Plaintiff has no excuse for this; obviously, this lawsuit was not high on his list of priorities. By paying a $150 filing fee (and then sitting back), plaintiff launched a lawsuit that dragged on for over thirteen months and caused defendants to spend over $10,000, not including the time they spent on the rule 60(b) motion, the motion for reconsideration or this appeal. Defendants petitioned for attorney fees by arguing that plaintiff litigated in bad faith. Although the district court did not explicitly find bad faith, it's hard to see any other justification for its fee award. By affirming it, the majority appears to concede that plaintiff acted in bad faith.
 
 
 29
 The district court did not abuse its discretion. Rather, it did precisely what district courts are supposed to do: It took a close look at the situation and concluded that enough is enough. We harm the administration of justice when we undermine the district court's authority in these circumstances. I would affirm.
 
 
 30
 APPENDIX

JOHN MEIENHOFER
ISB # [omitted] FILED
512 W. Bannock U.S. COURTS
Boise, ID 83702 00 JAN 27 PM 4:58
Tel: [omitted] _________________
Fax: [omitted] CAMERON S. BURKE
 CLERK IDAHO
Attorney for the Plaintiff

 IN THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF IDAHO

-------------------------------------
JAMES LAURINO, M.D. |
 Plaintiff, |
v. |
SYRINGA GENERAL | CASE NO.
HOSPITAL, a political subdivision | CIV 98-0439-S-EJL
of the State of Idaho; DAVID P. |
BODINE, JR., MARY ANN | AFFIDAVIT OF
SOLBERG; MARY SCHMIDT, | DR. JAMES
CHARLES A. PRATT, BETTY J. > LAURINO IN
ALM and KARON COBURN, | SUPPORT OF
each individually and in official | MOTION TO SET
capacities; and, WAYNE | ASIDE ORDER OF
HOLLOPETER, M.D., | DISMISSAL AND
individually and in his official | REINSTATE CASE
capacity; and JOHN DOES 1-5, |
individually and in official |
capacities, |
 Defendants. |
-------------------------------------
 
 
 31
 STATE OF MARYLAND)
 :ss:
County of Montgomery
 
 
 32
 Dr. James Laurino, being first duly sworn upon oath, hereby deposes and says:
 
 
 33
 1. I am the Plaintiff in the above entitled matter.
 
 
 34
 2. My former counsel, Mr. Brian Donesley, withdrew from this matter, pursuant to Court Order dated November 4, 1999.
 
 
 35
 3. Mr. Donesley mailed me the Court's Order allowing his withdrawal from the case, and I received the Order in the middle to late November, 1999, time frame.
 
 
 36
 4. I have had many pressures amounting in my personal and professional career in the last several months. For example, I am in the midst of a Divorce Action with my wife and that matter has occupied much of my thoughts and energies, and certainly was at the forefront of my thoughts during the Holiday season. Because of the circumstances surrounding my former employment with the Defendant Syringa Hospital, I was in the position where I needed to move out of state. Further, with my new position here in Rockville, Maryland, I have had to devote a lot of extra time and energy in getting oriented and organized in my new position. Moreover, this new position is also devoted to furthering my medical education, and requires me to move from place to place, thereby making me difficult to contact.
 
 
 37
 5. While I should have been more diligent and had an attorney file a Notice of Appearance prior to filing this Motion, time kept marching along and I did not get an attorney retained within the twenty days pursuant to the Court's Order allowing the withdrawal of Mr. Donesley. However, I was in the process of telephoning attorneys in the Boise, Idaho area in the late November to early December time frame. Several of the attorneys who I telephoned did not return my telephone calls. Even through the month of December, I was not able to obtain an attorney to represent me in this matter.
 
 
 38
 6. In the past week, I enlisted Mr. Donesley's assistance in trying to obtain another attorney, and was finally able to retain Mr. Meienhofer with the help of Mr. Donesley.
 
 
 39
 7. Because my career depends on an appropriate resolution of the underlying Complaint in this matter, I am asking that the Court set aside its Order of Dismissal based on excusable neglect, and allow this matter to proceed forward on the merits. With regard to the merits, my staff privileges at Syringa Hospital were revoked based upon a review of fifteen medical records concerning fifteen patients all of whom had good outcomes. Despite this being a first offense in my medical career, Syringa Hospital made no attempt or suggestion of resolution, re-education, or mediation. The revocation of privileges results in a report to all states and a National Physicians Data Bank which precludes my ability to practice medicine anywhere.
 
 
 40
 8. Having a good position is vital to me as I am in the process of getting divorced and will have to pay child support for my seven children.
 
 FURTHER YOUR AFFIANT SAYETH NAUGHT
 
 41
 DATED this 26th day of January, 2000.
 
 
 42
 s/ _______________________________________
 James Laurino
 
 
 43
 SUBSCRIBED AND SWORN to before me this 26 day of January, 2000.
 
 
 44
 s/ ______________________________________
 Notary Public for Idaho
 Residing at: Montgomery, Maryland
 My Commission Expires: 1 March 2003