**Laffit PINCAY, Jr.; Christopher J. McCarron, Plaintiffs–Appellants,**

v.

**Vincent S. ANDREWS; Robert Andrews; Vincent Andrews Management Corp., Defendants–Appellees.**

No. 02–56577.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc June 24, 2004.

Filed Nov. 15, 2004.

854

Neil Papiano and Patrick McAdam, Iverson, Yoakum, Papiano & Hatch, Los Angeles, CA, for plaintiffs-appellants.

David Boies and Robert Silver, Boies, Schiller & Flexner, LLP, Armonk, NY, for defendants-appellees.

Before SCHROEDER, Chief Judge, KOZINSKI, RYMER, KLEINFELD, THOMAS, SILVERMAN, McKEOWN, GOULD, BERZON, RAWLINSON, and CALLAHAN, Circuit Judges.

SCHROEDER, Chief Judge.

This appeal represents a lawyer's nightmare. A sophisticated law firm, with what it thought was a sophisticated system to determine and calendar filing deadlines, missed a critical one: the 30–day time period in which to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(A). The rule, however, provides for a grace period of 30 days within which a lawyer in such a fix may ask the district court for an extension of time, and the court, in the exercise of its discretion, may grant the extension if it determines that the neglect of the attorney was "excusable."[1] Here an experienced trial judge found excusable neglect, and the appellee asks us to overturn that ruling.

The underlying dispute began in 1989 when Laffit Pincay, Jr. and Christopher McCarron (Pincay) sued Vincent S. Andrews, Robert L. Andrews, and Vincent Andrews Management Corp. (Andrews) for financial injuries stemming from alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and California law. In 1992, a jury returned verdicts in Pincay's favor on both the RICO and the California counts. Pincay was ordered to elect a remedy, and

1. The rule provides in relevant part: "The district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) ... that party shows excusable neglect or good cause." Fed. R.App. P. 4(a)(5)(A).

he chose to pursue the RICO judgment. This judgment was reversed on appeal on the ground that the RICO claim was barred by the federal statute of limitations. *Pincay v. Andrews,* 238 F.3d 1106, 1110 (9th Cir.2001). On remand, Pincay elected to pursue the remedy on his California law claim. Judgment was entered in his favor on July 3, 2002.

Andrews's notice of appeal was due 30 days later, but a paralegal charged with calendaring filing deadlines misread the rule and advised Andrews's attorney that the notice was not due for 60 days, the time allowed when the government is a party to the case. *See* Fed. R.App. P. 4(a)(1)(B). Andrews's counsel learned about the error when Pincay relied upon the judgment as being final in related bankruptcy proceedings, and Andrews promptly tendered a notice of appeal together with a request for an extension within the 30–day grace period. By that time the matter had been in litigation for more than 15 years. Everyone involved should have been well aware that the government was not a party to the case, and any lawyer or paralegal should have been able to read the rule correctly. The misreading of the rule was a critical error that, had the district court viewed the situation differently, would have ended the litigation then and there with an irreparably adverse result for Andrews. The district court, however, found the neglect excusable and granted the motion for an extension of time to file the notice of appeal.

Pincay appealed to this court, and a majority of the three-judge panel concluded that Andrews's attorney had improperly delegated the function of calendaring to a paralegal, and held that the attorney's reliance on a paralegal was inexcusable as a matter of law. *Pincay v. Andrews,* 351 F.3d 947, 951–52 (9th Cir.2003). It or-dered the appeal dismissed. The dissent would have applied a more flexible and deferential standard and affirmed the district court. *Id.* at 952–56 (Kleinfeld, J., dissenting).

A majority of the active non-recused judges of the court voted to rehear the case en banc to consider whether the creation of a per se rule against delegation to paralegals, or indeed any per se rule involving missed filing deadlines, is consistent with the United States Supreme Court's leading authority on the modern concept of excusable neglect, *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). We now hold that per se rules are not consistent with *Pioneer,* and we uphold the exercise of the district court's discretion to permit the filing of the notice of appeal in this case.

The *Pioneer* decision arose in the bankruptcy context and involved the "bar date" for the filing of claims. The Court in *Pioneer* established a four-part balancing test for determining whether there had been "excusable neglect" within the meaning of Federal Rule of Bankruptcy Procedure 9006(b)(1). The Court also reviewed various contexts in which the phrase appeared in the federal rules of procedure and made it clear the same test applies in all those contexts. The *Pioneer* factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. 507 U.S. at 395, 113 S.Ct. 1489.

In this case, the district court analyzed each of the *Pioneer* factors and correctly found: (1) there was no prejudice, (2) the length of delay was small, (3) the reason

for the delay was carelessness, and (4) there was no evidence of bad faith. It then concluded that even though the reason for the delay was the carelessness of Andrews's counsel, that fact did not render the neglect inexcusable. The district court relied on this court's decision in *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir.1996), in which we affirmed an order granting an extension of time in a case that involved an attorney's calendaring error.

■ Because the panel majority decided the case in part on the issue of delegation of calendaring to a paralegal, we consider that issue first. This issue was not presented to the district court, and it was raised sua sponte by the three-judge panel.

In the modern world of legal practice, the delegation of repetitive legal tasks to paralegals has become a necessary fixture. Such delegation has become an integral part of the struggle to keep down the costs of legal representation. Moreover, the delegation of such tasks to specialized, well-educated non-lawyers may well ensure greater accuracy in meeting deadlines than a practice of having each lawyer in a large firm calculate each filing deadline anew. The task of keeping track of necessary deadlines will involve some delegation. The responsibility for the error falls on the attorney regardless of whether the error was made by an attorney or a paralegal. *See* Model Rules of Prof'l Conduct R. 5.5 cmt. 2 (2002) ("This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work."). We hold that delegation of the task of ascertaining the deadline was not per se inexcusable neglect.

The larger question in this case is whether the misreading of the clear rule

could appropriately have been considered excusable. Resolution of that question requires some effort to try to distill any principles that have evolved in the 10 years since *Pioneer*. In *Pioneer* itself, the Court adopted a broader and more flexible test for excusable neglect. A narrower test existed in many circuits before *Pioneer* that limited excusable neglect to situations that were beyond the control of the movant for an extension as, for example, the messenger being hit by a truck on the way to the court clerk's filing desk. *See Pioneer*, 507 U.S. at 387–88 & n. 3, 113 S.Ct. 1489.

The district court followed our decision in *Marx*, where we acknowledged that *Pioneer* had worked a change in our circuit's law as to what constitutes excusable neglect. 87 F.3d at 1053–54. As we explained in *Marx*, our "strict standard," which required both a showing of extraordinary circumstances that prevented timely filing and injustice resulting from denying an extension, *id.* at 1053 (citing *Pratt v. McCarthy*, 850 F.2d 590, 593 (9th Cir. 1988)), gave way to an equitable determination that involves consideration of the four *Pioneer* factors. *Id.* at 1054. We therefore affirmed the district court's grant of an extension of time to file a notice of appeal in *Marx* because the district court correctly considered the *Pioneer* factors. We found that the district court did not abuse its discretion, and we said: "The district court's analysis of the *Pioneer Inv.* factors in this case, although considerably lenient to the plaintiffs, was not a clear error of judgment." *Id.*

Our court, in other cases, has also described *Pioneer*'s flexible approach, saying, for example, "we will ordinarily examine all of the circumstances involved rather than holding that any single circumstance in isolation compels a particular result regardless of the other factors." *Briones v.*

*Riviera Hotel & Casino,* 116 F.3d 379, 382 n. 2 (9th Cir.1997); *see also Bateman v. United States Postal Serv.,* 231 F.3d 1220, 1224 (9th Cir.2000).

We seemed to take a more narrow approach in *Kyle v. Campbell Soup Co.,* 28 F.3d 928 (9th Cir.1994). In that case our court reversed the district court's finding of excusable neglect. We emphasized the fact that the attorney had made a mistake in interpreting rules that were not ambiguous and we focused on the particular facts of *Pioneer,* including a "dramatic ambiguity" in the notice of the filing deadline at issue. *Id.* at 931.

Our circuit's confusion is not isolated. The authorities interpreting *Pioneer* in a number of circuits are in some disarray. In fact, the confusion begins with *Pioneer* itself, and various subsequent circuit opinions have cited similar portions of *Pioneer* to support their respective but differing conclusions. The key passage in *Pioneer,* having a little something for everyone, is as follows:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "[e]xcusable neglect" under [Bankruptcy] Rule 6(b) is a some-what "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

507 U.S. at 392, 113 S.Ct. 1489 (internal footnotes omitted).

The experience of the Seventh and Fifth Circuits is instructive. The Seventh Circuit in *Prizevoits v. Indiana Bell Telephone Co.,* 76 F.3d 132 (7th Cir.1996), dismissed an appeal for lack of jurisdiction because the notice was not filed within the 30 days required by the Rule. In that case the attorney had missed the deadline for filing a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment and filed a motion to extend the time. The district court denied this motion because no extension is allowed under Rule 59. The time for filing a notice of appeal expired, however, while the motion was pending before the district court, and so the attorney moved for an extension under Rule 4. The district court granted the extension of time to appeal, but the Seventh Circuit reversed. *Id.* at 133. The *Prizevoits* majority cited *Pioneer* for the proposition that "excusable neglect" is not limited to situations where the failure to timely file 'is due to circumstances beyond the control of the filer,' " *id.* at 134 (quoting *Pioneer,* 507 U.S. at 391, 113 S.Ct. 1489), but limited the reach of *Pioneer* to such things as "plausible misinterpretations of ambiguous rules." *Id.* The majority then concluded: "Here the rule is crystal clear, the error egregious, the excuses so thin as to leave the lapse not only unexcused but inexplicable. If there was 'excusable' neglect here, we have difficulty imagining a case of inexcusable neglect." *Id.*

Judge Eschbach's dissent also relied on *Pioneer* and criticized the majority's choice "not to address the impact of *Pioneer* on our past decisions." *Id.* at 136. The dissent said: "In *Pioneer,* the Court held that attorney negligence may, in certain circumstances, constitute 'excusable neglect,' considerably liberalizing its meaning and prescribing a new analytical test." *Id.*

In the Fifth Circuit, a majority relied on *Prizevoits* in *Midwest Employers Cas. Co. v. Williams,* 161 F.3d 877 (5th Cir.1998), over a strong dissent by Judge Garza. Judge Garza cited authority, seemingly contrary to the majority, from both the Fifth and Seventh Circuits, interpreting the equitable factors of *Pioneer.* *Id.* at 882–84, 885. He cited *United States v. Evbuomwan,* 36 F.3d 89 (5th Cir.1994) (unpublished opinion) (reported at 36 F.3d

89 (table case)),[2] "where the court found that the district court did not abuse its discretion in finding that a good faith misinterpretation of plain rules was excusable neglect." He also cited *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 205 (5th Cir. 1993), where the court found that the district court did not abuse its discretion in finding excusable neglect because the attorney's obvious error was mitigated by the lack of prejudice to the nonmovant and the shortness of the delay. Finally, he cited *United States v. Brown*, 133 F.3d 993 (7th Cir.1998), where the Seventh Circuit affirmed the district court's finding that an attorney's confusing of state rules with federal rules amounted to excusable neglect. *Id.* at 996. The Seventh Circuit said: "*Pioneer* made clear that the standard is a balancing test, meaning that a delay might be excused even where the reasons for the delay are not particularly compelling." *Id.* at 997.

The Eleventh Circuit seems to have set forth a more categorical test. In *Advanced Estimating System, Inc. v. Riney*, 130 F.3d 996 (11th Cir.1997), the court stated: "The ancient legal maxim continues to apply: ignorance of fact may excuse; ignorance of law does not excuse. Accordingly, [Appellant's] counsel's misunderstanding of the law cannot constitute excusable neglect." *Id.* at 999 (citations omitted). That decision seemed to move the Eleventh Circuit back toward the approach it had taken before *Pioneer*, and which *Pioneer* rejected, i.e., excusable neglect is limited to matters beyond the control of the attorney. *See In re Analytical Systems*, 933 F.2d 939, 942 (11th Cir.1991) (reciting the Eleventh Circuit's pre-*Pioneer* standard for establishing excusable neglect); *Pioneer*, 507 U.S. at 387 n. 3, 113

S.Ct. 1489 (citing *In re Analytical Sys.* as an example of a court that had taken a narrow view of excusable neglect). In *Pioneer*, the Supreme Court rejected "a bright-line rule of the sort embraced by some Courts of Appeals, erecting a rigid barrier against late filings attributable in any degree to the movant's negligence" as "irreconcilable with our cases." 507 U.S. at 395 n. 14, 113 S.Ct. 1489.

■ Despite this confusion, there appears to be general agreement on at least one principle: the standard of review. We review for abuse of discretion a district court's decision to grant or deny a motion for an extension of time to file a notice of appeal. *Marx*, 87 F.3d at 1054; *see also Pioneer*, 507 U.S. at 398, 113 S.Ct. 1489 ("To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.'"); *Kyle*, 28 F.3d at 930; *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 362 (2d Cir.2003); *Midwest Employers Cas. Co.*, 161 F.3d at 879; *Advanced Estimating Sys.*, 130 F.3d at 997. We must therefore affirm unless we are left with the definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors. *Marx*, 87 F.3d at 1054.

In this case the mistake itself, the misreading of the Rule, was egregious, and the lawyer undoubtedly should have checked the Rule itself before relying on the paralegal's reading. Both the paralegal and the lawyer were negligent. That, however, represents the beginning of our inquiry as to whether the negligence is

---

**2.** Although *Evbuomwan* is an unpublished opinion, Judge Garza noted that, under Fifth Circuit Rule 47.5.3, it was binding precedent.

*Midwest Employers Cas. Co.*, 161 F.3d at 882 n. 7.

excusable, not the end of it. The real question is whether there was enough in the context of this case to bring a determination of excusable neglect within the district court's discretion.

We therefore turn to examining the *Pioneer* factors as they apply here. The parties seem to agree that three of the factors militate in favor of excusability, and they focus their arguments on the remaining factor: the reason for the delay. Appellee Andrews characterizes the reason for the delay as the failure of a "carefully designed" calendaring system operated by experienced paralegals that heretofore had worked flawlessly. Appellant Pincay, on the other hand, stresses the degree of carelessness in the failure to read the applicable Rule.

■ We recognize that a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered; yet the nature of the contextual analysis and the balancing of the factors adopted in *Pioneer* counsel against the creation of any rigid rule. Rather, the decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court because the district court is in a better position than we are to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers (in this litigation over its 15–year history), and the likelihood of injustice if the appeal was not allowed. Had the district court declined to permit the filing of the notice, we would be hard pressed to find any rationale requiring us to reverse.

*Pioneer* itself instructs courts to determine the issue of excusable neglect within the context of the particular case, a context with which the trial court is most familiar. Any rationale suggesting that misinterpretation of an unambiguous rule can never be excusable neglect is, in our view, contrary to that instruction. "[T]he right way, under *Pioneer*, to decide cases involving ignorance of federal rules is with an 'elastic concept' equitable in nature, not with a per se rule." *Pincay v. Andrews,* 351 F.3d 947, 953 (9th Cir.2003) (Kleinfeld, J., dissenting).

We are also mindful that Rule 4 itself provides for leniency in limited circumstances. It could have been written more rigidly, allowing for no window of opportunity once the deadline was missed. Many states' rules provide for an extension of the time for filing a notice of appeal under few, if any, circumstances. *See, e.g.,* Ariz. R. Civ.App. P. 9 (providing for an extension of time to file a notice of appeal only if a party did not receive notice of the entry of judgment and no party would be prejudiced); *Matter of Appeal in Pima County Juvenile Action No. S–933,* 135 Ariz. 278, 660 P.2d 1205, 1207 (1982) ("Excusable neglect affords no basis for relief from the dismissal of an untimely appeal."); Cal. R. Ct. 3 (listing circumstances in which the time to appeal is extended and not including an extension for excusable neglect); *In re Hanley's Estate,* 23 Cal.2d 120, 142 P.2d 423, 424–25 (1943) ("In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal even to relieve against mistake, inadvertence, accident, or misfortune.") (internal citations omitted). The federal rule is a more flexible one that permits a narrow 30–day window for requesting an extension, and the trial court has wide discretion as to whether to excuse the lapse.

We understand several of our sister circuits have tried to fashion a rule making a mistake of law per se inexcusable under Rule 4. *See, e.g., Silivanch,* 333 F.3d at 368–69 (quoting *Weinstock v. Cleary, Gott-*

*lieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994), which in turn quotes a series of pre-*Pioneer* cases including *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 515 (2d Cir.1985)) (" '[t]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.' "); *Advanced Estimating Sys.,* 130 F.3d at 998 ("[A]n attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect."). *Prizevoits,* 76 F.3d at 133 ("An unaccountable lapse is not excusable neglect."); We agree that a lawyer's mistake of law in reading a rule of procedure is not a compelling excuse. At the same time, however, a lawyer's mistake of fact, for example, in thinking the government was a party to a case and that the 60–day rule applied for that reason, would be no more compelling.

We are persuaded that, under *Pioneer,* the correct approach is to avoid any per se rule. *Pioneer* cautioned against "erecting a rigid barrier against late filings attributable in any degree to the movant's negligence." 507 U.S. at 395 n. 14, 113 S.Ct. 1489. There should similarly be no rigid legal rule against late filings attributable to any particular type of negligence. Instead, we leave the weighing of *Pioneer's* equitable factors to the discretion of the district court in every case.

We hold that the district court did not abuse its discretion in this case. Therefore, the district court's order granting the defendant's motion for an extension of time to file the notice of appeal is AFFIRMED. The merits of the appeal are before the three judge panel in appeal number 02–56491. The panel should proceed to decide that appeal.

BERZON, Circuit Judge, concurring:

Although I join the majority opinion in full, I write separately to briefly emphasize the two points that I believe dispositive of this case and that explain why I cannot agree with an otherwise persuasive dissent.

First, in his dissent, Judge Kozinski concludes that "[m]ost of the work" is done by *Pioneer's* third factor—the reason for the delay. *Post* at 862. But *Pioneer* portends a balancing test, and does not ascribe determinative significance to *any* single factor. In other words, whether neglect is"excusable" is the conclusion one reaches after considering the pertinent factors, not an independent element with moral content. *Pioneer* thus indicates that a district court may find neglect "excusable" if it is caught quickly, hurts no one, and is a real mistake, rather than one feigned for some tactical reason—*even if* no decent lawyer would have made that error. There is no linguistic flaw in terming such errors "excusable," meaning nothing more than "appropriate to excuse."

Second, even if I agreed with the dissent that the defendants had to show "something" in satisfaction of *Pioneer's* third prong, I would hold that there is "something" here. The dissent's position is seemingly that, for neglect to be excusable, the reason for the error must be one that an appellate court views as understandable or sympathetic—a"good" reason in some respect. Such an assessment is necessarily subjective. The examples Judge Kozinski gives indicate that courts have recognized personal difficulties, client communication problems, and confusing rules as "good" reasons—as "something"— that weigh positively in the *Pioneer* balance, while viewing misreading clear rules as not a "good" reason—not "something."

If this were an essential inquiry, I would hold that the district court did not abuse its discretion in holding that even the complete misfiring of a generally well-conceived calendaring system is "some-

thing"—as compared, for example, to letting court orders pile up on desks, with no effort to read them or calculate appeal deadlines (a not-so-hypothetical hypothetical, as we have had such cases). Here, the lawyer did within the appeal deadline period make an effort, although an exceedingly poor one, to ascertain the appeal deadline; he did not ignore the issue entirely.

The existence of *some* effort to meet appeal deadlines is not simply evidence of good faith. The good faith consideration goes to the absence of tactical or strategic motives, not to the degree of negligence. Here, as Judge Kozinski recognizes, given the lack of prejudice or delay and the absence of *any* evidence of ulterior motives, "defendants need not have offered a terribly good countervailing reason to make their neglect excusable." *Post* at 861. In my view, a district court does not abuse its discretion by regarding the existence of a system designed to prevent the error from happening—even a system that is overly reliant on non-lawyers and that entirely misfired in this instance (probably as a result of over-reliance on non-lawyers)—as "something" weakly positive in the reason category.

I therefore join the opinion of the court in its entirety.

KOZINSKI, Circuit Judge, with whom Judges RYMER and McKEOWN join, dissenting:

We must never forget that it is "excusable neglect" we are expounding. Before *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), four circuits had forgotten; they interpreted this phrase as "requiring a showing

that the delay was caused by circumstances beyond the movant's control." *Id.* at 387 n. 3, 113 S.Ct. 1489. But how could circumstances beyond one's control be neglect? A jurisprudence that refused to excuse anything one could fairly call "neglect" was inconsistent with the clear text of rules that, by their terms, provide exceptions for "excusable neglect." *Pioneer* corrected the error and gave us a four-part test for recognizing when admitted neglect—inadvertence, miscalculation, negligence, carelessness—can nonetheless be excused.

But if excusable neglect must be neglect, it must also be excusable. *Pioneer*'s four-part test isn't just a black box into which we throw (1) prejudice to the adverse party, (2) the length of the delay, (3) the reason for the delay, and (4) the good faith of the movant, and accept whatever comes out. When all the weighing and balancing is done, we must have something we can say with a straight face is excusable. Factors one, two and four will almost always cut one way: Delays are seldom long, so prejudice is typically minimal. Bad-faith delay is rare, given that we're only dealing with "neglect," not deliberate flouting of the rules, *see Pioneer*, 507 U.S. at 387–88, 113 S.Ct. 1489—though flouting does happen on occasion. *See Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 758 (9th Cir. 2002) (Kozinski, J., dissenting). Most of the work, then, is done by factor three, the most important one, *see, e.g., Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.2000), which may balance out any findings under the other factors: The greater the delay, the prejudice to the adverse party and the movant's bad faith, the better a reason the movant must show for having missed the deadline.[1] In this

---

1. We know from the Supreme Court's opinion in *Pioneer* that not all excuses are created equal. Respondents in *Pioneer* offered two excuses for failing to file a timely proof of

case, the district court found there was no prejudice to Pincay, the delay was short and there was no bad faith. Thus, defendants need not have offered a terribly good countervailing reason to make their neglect excusable.

But they needed to show *something*. Was this a class action that bristled with client "consultation difficulties"? *See Marx v. Loral Corp.*, 87 F.3d 1049, 1053–54 (9th Cir.1996). Was the client distracted by a divorce and job change, and had he lost his lawyer to boot? *See Laurino*, 279 F.3d at 753. Was the rule confusing or notice of the deadline unusual? *See Pioneer*, 507 U.S. at 398, 113 S.Ct. 1489. No, no and no. The action was not complicated; the lawyer worked at a large, sophisticated law firm; and the rule is as clear as legal rules get:

> In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.

Fed. R.App. P. 4(a)(1)(A). As the text indicates, the rule only has three exceptions. The first is that the notice of appeal may be filed in 60 days instead of 30 if "the United States ... is a party." Fed. R.App. P. 4(a)(1)(B). It isn't. The second exception only applies if certain motions are filed. Fed. R.App. P. 4(a)(4). None were. The third exception applies to inmates, which defendant is not. Fed. R.App. P. 4(c). Thus, the number of days to file a notice of appeal was 30—no ifs, ands or buts about it. There surely are

complicated rules in the law, but this isn't one of them. The majority agrees: "[A]ny lawyer or paralegal should have been able to read the rule correctly." Maj. op. at 855.

Rather than present a reason for the neglect, defendants call the error " 'inexplicable,' " Appellees' Br. at 32 (quoting Appellants' Br. at 10), and "aberrational." *Id.* But "inexplicable" and "aberrational" are not synonyms for excusable. In such circumstances, I have trouble seeing how the balance can tilt in favor of excusability.

Defendants do point to one exonerating circumstance, though it is not so much a "reason" for the delay as a proof of their good faith, which we assume anyway: their lawyer's "[c]arefully [d]esigned and [s]taffed," "reliabl[e] and successful[ ]" calendaring system. Appellees' Br. at 7–8; *see also id.* at 10 (describing counsel's additional efforts to avoid error). But this doesn't help them: Extreme good faith has no exonerating power of its own; bad faith can sink an excusable neglect claim, and good faith is nothing but the absence of this negative. In any event, the calendaring system here did not fail. The wrong date was calendared with meticulous efficiency and accuracy. But the lawyer did fail by abdicating his basic duty—to determine the applicable appeal deadline based on a clear-as-day rule.

At bottom, what the sophisticated-calendaring-system excuse comes down to is that the lawyer didn't bother to read the rule; instead, he relied on what a calendaring clerk told him. While delegation may be a necessity in modern law practice,

claim: (1) "[R]espondents' counsel ... was experiencing upheaval in his law practice at the time of the bar date," 507 U.S. at 398, 113 S.Ct. 1489; and (2) the notice of the bar date contained a "dramatic ambiguity," *id.* (quoting *Brunswick Assocs. Ltd. P'ship v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.)*, 943 F.2d 673, 678 (6th Cir.1991)) (internal quotation marks omitted). The Court dis-

missed the first excuse as carrying "little weight," *id.*, but found the second one compelling. This passage in *Pioneer*, where the Court performed precisely the kind of review we are doing today, precludes the majority's argument that *any* excuse, or *no* excuse, can be sufficient to support a finding of excusable neglect.

it can't be a lever for ratcheting down the standard for professional competence. If it's inexcusable for a competent lawyer to misread the rule, it can't become excusable because the lawyer turned the task over to a non-lawyer. Errors made by clerks performing lawyerly functions are probably less excusable than those made by the lawyer himself; they certainly can't be more so.

The majority may be right that any competent lawyer or clerk should have been able to read the rule correctly, but that is quite different from saying that a lawyer and a non-lawyer would be equally likely to *mis*read the rule. Studying and practicing law develops certain skills and habits of mind that, one hopes, make lawyers more careful than non-lawyers about reading rules. When a lawyer turns this function over to a non-lawyer, it increases the likelihood an error will be made. Had the lawyer in this case read the rule himself, rather than relying on what a clerk told him, he doubtless would have gotten it right. Indeed, the 30-day rule for appeals in federal court is so well known among federal practitioners that, had the lawyer but *thought* about the rule, rather than relying entirely on the calendaring clerk's representation, he would surely have realized that the 60-day period is wrong. Instead, the lawyer delegated the calendaring issue to the calendaring "system," which is made up entirely of non-lawyers. If turning large chunks of law practice over to para-professionals can itself be an excuse for misreading rules, then we'll probably see more such delegation and misreading. It is the cold logic of the marketplace that conduct that is rewarded will be repeated.[2]

The Supreme Court told us in *Pioneer* that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." 507 U.S. at 392, 113 S.Ct. 1489. *Pioneer* forecloses any per se rule against "mistakes construing the rules." Still, the word "usually" suggests that we should not apply the balancing test so that virtually *no* type of mistake is off limits for excusable negligence. Yet this is precisely what the majority has done here, because if this mistake is excusable, I can't imagine a mistake that isn't. *See Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996) ("If there was 'excusable' neglect here, we have difficulty imagining a case of inexcusable neglect."). No circuit has taken a position as charitable to lawyer errors as we do today; the majority is at odds with decisions in at least six other circuits. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 369–70 (2d Cir.2003); *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir.1998); *Prizevoits*, 76 F.3d at 134; *Lowry*, 211 F.3d at 464; *United States v. Torres*, 372 F.3d 1159, 1163–64 (10th Cir.2004); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998–99 (11th Cir.1997).[3]

Identifying classes of cases where *Pioneer* balancing cannot excuse neglect is not, as the majority suggests, Maj. op. at 860, adopting a per se rule. It is merely

---

**2.** Judge Berzon suggests that "even the complete misfiring of a generally well-conceived calendaring system" is a better excuse than, say, "letting court orders pile up on desks, with no effort to read them or calculate appeal deadlines." Concur. op. at 860–61. But it's not clear why Judge Berzon believes the lawyer who procrastinates his professional duties is acting inexcusably while the lawyer who foists them off onto a non-lawyer is not.

Procrastination and delegation are different ways of shirking professional obligations. They both occasionally result in missed deadlines, for more or less the same reason: The lawyer paid insufficient attention to his cases.

**3.** The D.C. Circuit has upheld a district court finding of excusable neglect for missing a deadline, but this was in the context of "a case-management decision in a complex class action, in which district court discretion is at

providing the sort of guidance that we are entitled and required to give district courts. This is, in fact, what the Supreme Court did in *Pioneer*: It re-weighed the factors assessed by the bankruptcy court and found an abuse of discretion. If a finding that neglect is not excusable *can* be an abuse of discretion (as the Supreme Court held in *Pioneer*), it surely makes no sense to hold that a finding of excusable neglect *can never* be an abuse of discretion (as the majority holds today). *See id.* at 860 ("[W]e leave the weighing of *Pioneer's* equitable factors to the discretion of the district court in every case."). To do so abdicates our responsibility of appellate review and, if taken literally, results in as many rules as there are district judges.[4]

I would hold that the error here—whether made by the lawyer, the calendaring clerk or the candlestick-maker—is inexcusable and dismiss the appeal as untimely.

its greatest." *In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1210 (D.C.Cir.2003).

4. Imagine what will happen the next time we get a case on materially indistinguishable

facts, except that the district court found the delay *inexcusable.* Will it be just to tell the litigant that his case is lost because he happened to draw the wrong district judge?