IN RE: Karen Ann PELLE, Debtor.

**Karen Ann Pelle, Plaintiff**

v.

**Alliance Shippers, Inc., Defendant.**

Case No.: 2:14–bk–25552–BR
Adv. No.: 2:16–ap–01237–BR

United States Bankruptcy Court,
C.D. California.

Signed July 14, 2017

Date: June 20, 2017, Time: 10:00
AM, Courtroom: 1668

Stuart J. Wald, Murrieta, CA, for Plaintiff.

Kristi W. Dean, Stone Cha & Dean LLP, Woodland Hills, CA, Miles Kavaller, Encino, CA, Stuart R Simone, Gomez & Simone PC, Los Angeles, CA, for Defendant.

## MEMORANDUM RE ORDER DENYING MOTION FOR LEAVE TO LATE FILE DEFENDANT/APPELLANT ALLIANCE SHIPPERS, INC.'S NOTICE OF APPEAL OF ORDER GRANTING SUMMARY JUDGMENT

Barry Russell United States Bankruptcy Judge

This matter is before the Court on defendant/appellant Alliance Shippers, Inc.'s "Motion for Leave to Late File Appellant Alliance Shippers, Inc.'s Notice of Appeal of Order Granting Summary Judgment," filed on April 6, 2017. Plaintiff/appellee Karen Ann Pelle filed her opposition to the Motion on June 6, 2017. Defendant/appellant filed its reply to the opposition on June 12, 2017.

The Court held a hearing on the Motion on June 20, 2017 at 10:00 a.m. Miles L. Kavaller, Esq. appeared on behalf of the defendant/appellant and Stuart J. Wald, Esq. appeared on behalf of the plaintiff/appellee.

One day prior to the hearing date, on June 19, 2017, plaintiff/appellee filed a Notice of Withdrawal of her opposition to the Motion. The Notice of Withdrawal was filed without an attached declaration and stated that the opposition was being withdrawn "for fair consideration."

The Court was very concerned about the Notice of Withdrawal and its implication for the potential violation of 18 U.S.C. § 152(6), which states: "A person who knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11 shall be fined under this title, imprisoned not more than 5 years, or both."

At the hearing, the Court inquired of the parties regarding the details and circumstances surrounding the filing of the Notice of Withdrawal. The Court's worst fears were confirmed when defendant/appellant's counsel stated that he had offered $2,500.00 to the plaintiff/appellee and her counsel to withdraw her opposition to the Motion.

### I. Background

The complaint in this adversary proceeding, which was filed on May 22, 2016,

set forth two claims for relief: (1) violation of the automatic stay under 11 U.S.C. § 362(a), and (2) violation of the discharge injunction under 11 U.S.C. §§ 524(a) and 727(b). Both claims for relief concerned actions taken by the defendant/appellant against the plaintiff/appellee prior to February 25, 2016 in connection with a lawsuit commenced by the defendant/appellant against the plaintiff/appellee in New Jersey state court.

The first claim for relief sought to have all actions taken by defendant/appellant against the plaintiff/appellee in that state court action declared void *ab initio* and without any legal substance subject to full faith and credit as violations of the automatic stay. The second claim for relief sought to have all actions taken by defendant/appellant against the plaintiff/appellee in that state court action declared void *ab initio* and without any legal substance subject to full faith and credit as violations of the plaintiff/appellee's chapter 7 discharge and related injunction.

On September 29, 2016, plaintiff/appellee filed a motion for summary judgment. The Court granted the motion following a hearing on December 13, 2016. On March 2, 2017, the Court entered Summary Judgment in plaintiff/appellee's favor on both claims for relief.

The Summary Judgment further enjoined defendant/appellant from proceeding with the New Jersey state court case except for a pending motion by the plaintiff/appellee in that case seeking dismissal of the case, awarded plaintiff/appellee compensatory damages in the amount of $21,231.42 for defendant/appellant's violations of the automatic stay and/or discharge injunction, and awarded plaintiff/appellee punitive damages in the amount of $5,000.00 for the defendant/appellant's bad faith conduct in violating the automatic stay and/or discharge injunction.

Defendant/appellant filed its Notice of Appeal from this Court's Summary Judgment with the United States District Court on March 20, 2017. The Notice of Appeal included a request that the District Court withdraw the reference of this adversary proceeding from this Court. The District Court entered an order on May 5, 2017, in which it noted that the Notice of Appeal was filed four days late and that defendant/appellant sought leave to late file its Notice of Appeal and statement of issues on appeal. The District Court's May 5, 2017 order denied the defendant/appellant's request to withdraw the reference to hear its motions to file a late notice of appeal and statement of issues on appeal.

Defendant/appellant then filed the Motion for Leave to Late File [its] Notice of Appeal of Order Granting Summary Judgment, which is the subject of this Memorandum. In its Motion, defendant/appellant argued that a misunderstanding occurred between its local and out of state counsel concerning the receipt of electronic notices which would have advised them of the time to file a notice of appeal; that the misunderstanding caused a delay in filing of the Notice of Appeal in this case; and that the delay should be excused by this Court under the doctrine of "excusable neglect."

In support of its "excusable neglect" argument, defendant/appellant relied heavily on Pincay v. Andrews, 389 F.3d 853 (9th Cir. 2004) which, in turn, relied upon Pioneer Investment Services Company v. Brunswick Associates Limited Partnership et al., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

## II. The Doctrine of "Excusable Neglect"

While the facts and holdings of both Pioneer and Pincay are instructive, the cases do not provide support for a finding of "excusable neglect" in this case. As dis-

cussed more fully in section III below, the facts of this case do not satisfy the four-part balancing test set forth in Pioneer to determine the existence of "excusable neglect."

### A. Pioneer v. Brunswick

Pioneer involved Federal Rule of Bankruptcy Procedure ("FRBP") Rule 9006(b)(2), which provides: "Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

The Supreme Court described the facts of Pioneer as follows:

On April 13, 1989, the day after petitioner filed its Chapter 11 petition, the Bankruptcy Court mailed a "Notice for Meeting of Creditors" to petitioner's creditors. Along with the announcement of a May 5 meeting was the following passage:

"You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989." App. 29a.

The notice was received and read by Mark A. Berlin, president of the corporate general partners of each of the respondents. Berlin duly attended the creditors' meeting on May 5. The following month, respondents retained an experienced bankruptcy attorney, Marc Richards, to represent them in the proceedings. Berlin stated in an affidavit that he provided Richards with a complete copy of the case file, including a copy of the court's April 13, 1989, notice

to creditors. Berlin also asserted that he inquired of Richards whether there was a deadline for filing claims and that Richards assured him that no bar date had been set and that there was no urgency in filing proofs of claim. Id., at 121a. Richards and Berlin both attended a subsequent meeting of creditors on June 16, 1989.

Respondents failed to file any proofs of claim by the August 3, 1989, bar date. On August 23, 1989, respondents filed their proofs, along with a motion that the court permit the late filing under Rule 9006(b)(1). In particular, respondents' counsel explained that the bar date, of which he was unaware, came at a time when he was experiencing "a major and significant disruption" in his professional life caused by his withdrawal from his former law firm on July 31, 1989. Id., at 56a. Because of this disruption, counsel did not have access to his copy of the case file in this matter until mid–August. Ibid.

Pioneer, 507 U.S. at 383–84, 113 S.Ct. 1489.

The Supreme Court concluded and ruled as follows:

In assessing the culpability of respondents' counsel, **we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases.** As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. See [In re Pioneer Inv. Services Co., ]943 F.2d at 678[ (6th Cir. 1991) ]. **We agree with the court that the "peculiar and inconspicuous**

**placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification.** *Ibid.* 15 This is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." **In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."**

For these reasons, the judgment of the Court of Appeals is

*Affirmed.*

Pioneer, 507 U.S. at 398–99, 113 S.Ct. 1489 (emphasis added).

In reaching its conclusion, the Court established a four-part balancing test for determining whether "excusable neglect" existed within the meaning of FRBP 9006(b)(1). The four factors consisted of (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. Pioneer, 507 U.S. at 395, 113 S.Ct. 1489.

### B. Pincay v. Andrews

As noted above, defendant/appellant relied heavily on Pincay in support of its position in its Motion. In Pincay, the Ninth Circuit, *en banc*, held that there is no rigid *per se* rule against late filings of notice of appeal attributable to any particular type of attorney negligence, and that the Dis-

trict Court did not abuse its discretion in granting an extension of time to file a notice of appeal based on a finding of excusable neglect.

In Pincay, a sophisticated law firm with what was assumed to be a sophisticated calendaring system for filing deadlines missed a critical deadline of 30 days for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(A). This rule, however, also allows for a grace period of 30 days within which a lawyer who missed the deadline may ask the District Court for an extension of time which the District Court, in the exercise of its discretion, may grant if it determines that the neglect of the attorney was "excusable." Pincay, 389 F.3d at 854.

The underlying lawsuit alleged financial injuries arising from violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and California law. A jury found in favor of the plaintiff Pincay on both the RICO and California counts. Ultimately judgment was entered in favor of plaintiff on his California law claim on July 3, 2002.

Defendant Andrews' deadline for filing a notice of appeal was due 30 days later but a paralegal in charge of calendaring deadlines misread the rule and advised defendant's attorney that the notice of appeal was not due for 60 days. Counsel for defendant realized the error when plaintiff relied on the judgment as being final. Defendant promptly filed a notice of appeal with a request for an extension within the 30–day grace period. Pincay, 389 F.3d at 854–55.

The District Court found the neglect excusable and granted the motion for an extension of time to file the notice of appeal. Pincay appealed to the Ninth Circuit and a three-judge panel held that the attorney's reliance on a paralegal was inex-

cusable as a matter of law and ordered the appeal dismissed. Pincay, 389 F.3d at 855.

The Ninth Circuit voted to rehear the case *en banc* to look to whether the "creation of a *per se* rule against delegation to paralegals, or indeed any *per se* rule involving missed filing deadlines, is consistent with the United States Supreme Court's leading authority on the modern concept of excusable neglect, Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)." Pincay, 389 F.3d at 855.

As discussed above, Pioneer established a four-part balancing test for determining whether "excusable neglect" existed within the meaning of FRBP 9006(b)(1). Pioneer, 507 U.S. at 395, 113 S.Ct. 1489. After examining the Pioneer factors, the Ninth Circuit in Pincay stated that "the decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court because the district court is in a better position...to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes. ..." Pincay, 389 F.3d at 859. The Court further stated that "**Had the district court declined to permit the filing of the notice, we would be hard pressed to find any rationale requiring us to reverse.**" Id. (emphasis added).

The facts of Pincay are instructive. As stated by the Ninth Circuit:

Andrews's notice of appeal was due 30 days later, but a paralegal charged with calendaring filing deadlines misread the rule and advised Andrews's attorney that the notice was not due for 60 days, the time allowed when the government is a party to the case. *See* Fed. R.App. P. 4(a)(1)(B). Andrews's counsel learned about the error when Pincay relied upon the judgment as being final in related bankruptcy proceedings, and Andrews promptly tendered a notice of appeal together with a request for an extension within the 30–day grace period. **By that time the matter had been in litigation for more than 15 years.** Everyone involved should have been well aware that the government was not a party to the case, and any lawyer or paralegal should have been able to read the rule correctly. The misreading of the rule was a critical error that, had the district court viewed the situation differently, would have ended the litigation then and there with an irreparably adverse result for Andrews. The district court, however, found the neglect excusable and granted the motion for an extension of time to file the notice of appeal.

Pincay, 389 F.3d at 855 (emphasis added). It is clear that the District Court granted the motion to extend the time to appeal in great part due to the fact that the late filing would result in an abrupt end to more than fifteen years of litigation.

### III. The Doctrine of "Excusable Neglect" as Applied to the Current Case

■ In the adversary proceeding before this Court, defendant/appellant has had the same three attorneys representing it throughout this litigation, *i.e.*, Ronald Horowitz, Esq. of Palm Coast, FL, admitted *in pro hac vice*; Miles L. Kavaller, Esq. of Woodland Hills, CA; and Stuart R. Simone, Esq., a member of Gomez & Simone of Los Angeles, CA. The Motion included supporting declarations of Mr. Kavaller and Jason Boyer, Esq., an attorney employed by Gomez & Simone.

The Motion argued that both declarations established that there was a misunderstanding about the transmission of the Court Clerk's electronic notices and that this misunderstanding, or the absence of service on *pro hac vice* counsel Horowitz

or local counsel Kavaller, separately or taken together, constituted "excusable neglect" under Pincay and, by extension, Pioneer.

This Court disagrees. The declarations demonstrate extreme negligence, an amazing and inexcusable lack of attention to, and compliance with, the requirements of the bankruptcy rules, and a cavalier attitude concerning the attorneys' obligations to comply with the rules, but do not come close to demonstrating "excusable neglect."

Mr. Kavaller's declaration explained that he does not regularly practice in the Bankruptcy Court and therefore made arrangements with Mr. Simone, with whom he shares office space in Woodland Hills, CA, to arrange for the e-filing of pleadings and receipt of electronic notices of filings. Attorney Jason Boyer was his contact in Mr. Simone's office for these purposes.

Specifically, Mr. Kavaller's declaration stated, in pertinent part that:

. . .

4. On March 17, 2017 at approximately 1:30 p.m., Mr. Horowitz notified me that the Order Granting Pelle's MSJ had been filed and entered on March 2, 2017 and that the 14 day appeal period expired on 3/16, the day before. I returned to my office and was advised that Mr. Boyer had recently been married and was on his honeymoon in Austria. I asked Mr. Simone's assistant to look through Mr. Boyer's e-mail and she was able to retrieve the electronic notices of both the March 2 Order and the March 10 Order. I prepared Notices of Appeal for both Orders and e-mailed them to Mr. Simone's staff only to learn that at 4:00 p.m. on Friday, March 17, the person able to perform the e-filing had left early for the St. Patrick's day holiday. The appeals of both orders were filed on March 20.

The next paragraph of Mr. Kavaller's declaration demonstrates a particularly careless attitude towards his responsibility in this matter:

5. I had no time to research the question of an extension of time to file a notice of appeal until March 29, 2017, after I returned from a speaking engagement in Las Vegas on March 20 and a family vacation in Kauai from March 21–28. I have now learned that the BK Court may extend the time to appeal under Rule 8002(d)(1) with a showing of "excusable neglect."

Mr. Boyer's declaration stated that he was asked by Mr. Kavaller and Mr. Simone to perform e-filing in this adversary as a courtesy to Mr. Kavaller, but that he was not under the impression that either Mr. Kavaller or Mr. Horowitz (pro hac vice counsel) needed him to forward electronic filing notices. He received the electronic notice of this Court's order granting plaintiff/appellee's summary judgment motion on March 2, 2017 but did not forward it to Mr. Kavaller, "believing I was not asked to do so and further believing that both Kavaller and Horowitz were receiving electronic notices from the court."

It is clear from the declarations that defendant/appellee's counsel allowed vacations, speaking engagements, a honeymoon, and leaving early for the St. Patrick's Day holiday to interfere with their responsibility—and their client's ability—to comply with the requirements to timely file a notice of appeal. The Court notes that this cavalier attitude was present throughout the entirety of this litigation.

The conduct that led to this Motion can at best be described factually as a comedy of errors and at worst as a demonstration of an appalling lack of diligence and neglect by the defendant/appellant's attorneys. The issue, however, is whether counsel's neglect was "excusable." As not-

ed above, the four factors which, according to Pioneer, need to be considered and weighed in establishing excusable neglect are (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith.

Here, the notice of appeal was filed four days late. Hence, there was no great danger of prejudice to the non-moving party except for the potential in having to participate in the appeals process and continue litigating. The length of the delay (four days) was brief, and the underlying adversary proceeding had been pending for less than one year. By contrast, the District Court in Pincay granted the motion to extend the time to appeal in great part due to the fact that the late filing would result in an abrupt end to a **"matter [that] had been in litigation for more than 15 years."** Pincay, 389 F.3d at 855 (emphasis added).

As often seems the case, the stated reason for the delay is the factor considered to be the linchpin in deciding whether carelessness or neglect is excusable. Here, defendant/appellant or its out-of-state counsel decided to retain more than one attorney to advocate for its position in this adversary proceeding. One of its local counsel of record (Gomez & Simone) received electronic notice of the entry of the order granting the motion for summary judgment on March 2, 2017. Gomez & Simone had been listed as one of the attorneys of record at least since July 25, 2016 when it filed electronically defendant/appellant's answer to the complaint. The attorneys have had a system of forwarding and sharing the electronic notices. Further, the other counsel not signed up in the electronic filing system in the bankruptcy court (Mr. Kavaller) could have requested special notice from the outset of the case.

The Supreme Court in Pioneer gave little weight to the excuses of appellant's counsel in that case (i.e., the fact that counsel was experiencing upheaval in his law practice at the time of the relevant bar date). This Court gives even less weight to the excuses of defendant/appellant's counsel in this case ("miscommunications" due to vacations, speaking engagements, and the like). While their explanations show a lack of diligence, carelessness, and neglect, they do not come close to meeting the standard of "excusable neglect."

Also, the reason for the neglect in Pincay (an attorney's reliance on a paralegal's misreading of a rule regarding the calendaring of appeal deadlines) was far more excusable than that of the defendant/appellant in the instant case, and the Ninth Circuit made it clear that had the District Court denied the motion to extend, the Ninth Circuit would have affirmed that decision.

As for the good faith prong of the Pioneer test, the conduct leading to the late-filed notice of appeal and motion to allow the late-filed notice of appeal does not show bad faith. The Court notes, however, that bad faith by counsel for appellant/defendant permeated the entirety of the underlying adversary proceeding and motion for summary judgment, and led this Court to award plaintiff/appellee $21,231.42 in compensatory damages and $5,000.00 in punitive damages. Such bad faith conduct included, but was not limited to, the offer by appellant/defendant's counsel to pay plaintiff/appellee and her counsel $2,500.00 to withdraw the opposition to the instant Motion.

## IV.  Conclusion

After balancing the four factors established by the United States Supreme

Court in <u>Pioneer</u> to determine whether the neglect is excusable under Rule 9006(b)(2), this Court finds that the defendant/appellant has failed to establish excusable neglect for the late filing of the notice of appeal of the order granting the motion for summary judgment.